567 S.E.2d 244

**The STATE, Respondent,**

v.

**Bobby Wayne STONE, Appellant.**

**No. 25494.**

Supreme Court of South Carolina.

Heard May 16, 2002.

Decided July 15, 2002.

Deputy Chief Attorney Joseph L. Savitz, III, of South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General S. Creighton Waters, all of Columbia, and Solicitor C. Kelly Jackson, of Sumter, for respondent.

Justice WALLER.

Appellant, Bobby Wayne Stone, was convicted of murder, first-degree burglary, and possession of a weapon during a violent crime. He was sentenced to death for murder, and consecutively sentenced to thirty years for burglary, and five years for possession of a weapon. We affirm the convictions, but reverse Stone's death sentence and remand for a new sentencing proceeding.

## FACTS

Shortly before 7:00 p.m. on February 26, 1996, Ruth Griffith heard gunshots in her backyard. She called her next door neighbor, Landrow Taylor, who came over; the two called 911. As they waited in the living room, Griffith and Taylor heard someone come onto the screened porch on the side of the house and start banging on the door to the house. A wooden board which had been nailed over a broken window pane on the lower right-hand corner of the door broke out. Sumter police officer, Sergeant Charles Kubala arrived at 7:07 p.m.; he was motioned to the side of the house by Taylor. As Taylor and Griffith waited inside the house, they heard someone shout "Halt" or "Hold It" followed immediately by three or four gunshots. A second police officer arrived to find Kubala had been shot in the right ear and neck. Kubala died at the scene.

After four hours of searching the wooded area behind Griffith's home, Stone was found lying beneath two fallen trees, with a .22 caliber pistol under him. A shotgun had been left on the screened porch. Stone confessed to the shooting, but claimed he had drank about twelve beers in the six hours prior to the shooting. He told police that when he heard a man's voice yelling at him from outside the screened porch, he

turned and the gun went off, so he ran.[1] The jury convicted Stone of murder, first degree burglary, and possession of a firearm during commission of a violent crime.

## ISSUES

1. Did the court err in failing to direct a verdict on the charge of first-degree burglary?

2. Did the court err in excusing a juror during sentencing?

3. Did the court err in refusing to charge the statutory mitigating circumstances of S.C.Code Ann. § 16–3–20(C)(b)(6) & (7)(Supp.2001)?

4. Did the court err in failing to instruct the jury that Stone would be ineligible for parole if sentenced to life imprisonment?

## 1. DIRECTED VERDICT–FIRST DEGREE BURGLARY

Stone asserts he was entitled to a directed verdict on the charge of burglary as there was no evidence he entered Ruth Griffith's "dwelling." We disagree.

Under S.C.Code Ann. § 16–11–311(A)(Supp.2001), a person is guilty of burglary in the first degree if the person enters a dwelling without consent and with intent to commit a crime in the dwelling, and the entering is accompanied by an aggravating circumstance. For purposes of burglary, a "dwelling house" is defined by S.C.Code Ann. § 16–11–10 (1985) as follows:

> With respect to the crimes of burglary and arson and to all criminal offenses which are constituted or aggravated by being committed in a dwelling house, any house, outhouse, apartment, building, erection, shed or box in which there sleeps a proprietor, tenant, watchman, clerk, laborer or person who lodges there with a view to the protection of property shall be deemed a dwelling house, and of such a dwelling house or of any other dwelling house all houses, outhouses, buildings, sheds and erections which are within two hundred yards of it and are appurtenant to it or to the

---

1. Stone claimed he had gone to visit Griffith as he had dated Griffith's niece a few years earlier and had previously been to her home.

same establishment of which it is an appurtenance shall be deemed parcels.

A "dwelling" also means the living quarters of a building which is used or normally used for sleeping, living, or lodging by a person. S.C.Code Ann. § 16–11–310 (Supp.2001).

We find Griffith's screened porch meets the statutory definition of a dwelling. The porch is attached to the left side of Griffith's house. It has three concrete block stairs going up to it, and appears from photographs to be very small, approximately four feet on each side, with wood panels which extend two-thirds of the way up on two sides, and a screened door on the third side. The porch leads into and out of the laundry room and is used primarily to store wood and paint cans. Griffith uses the porch for ingress and egress to her clothesline outside. We find the screened porch is appurtenant, and is used for the protection of Griffith's property (paint and wood) so as to come within the definition of a dwelling.

We have not previously addressed, under the current burglary statute, whether a fully enclosed screened porch is a dwelling within the meaning of section 16–11–10. In the 1913 case of *State v. Puckett*, 95 S.C. 114, 78 S.E. 737 (1913), we addressed whether the defendant could be convicted of burglary for entering an unenclosed piazza, which had a two and one-half foot balustrade, and was open on the top 6–7 feet, with a picket gate on each end to keep out chickens and dogs. Under the facts of the case, the Court held the evidence did not show the piazza was such a part of the dwelling house as was contemplated by law to make it an offense to enter in the nighttime against the security of the dwelling house.[2] However, at the time *Puckett* was decided, common law required a breaking in order to establish the offense of burglary. The offense of burglary no longer requires such a breaking. Further, unlike *Puckett*, the porch here was completely enclosed and was utilized for the protection of Griffith's property. We

---

2. The *Puckett* Court noted that on the night in question it was damp and raining and the defendant was found on the piazza "under suspicious circumstances." The Court found that "there is no evidence that he stole anything or made any overt act to commit a felony." 78 S.E. at 737. Accordingly, *Puckett* could have been decided on the basis of a lack of intent to commit a crime. Whether the piazza was part of the "dwelling" was unnecessary to resolution of the case.

find these factors sufficient to demonstrate the porch was part of Griffith's dwelling.

Furthermore, numerous courts in other jurisdictions have held screened porches qualify as part of a dwelling for purposes of burglary statutes. *See State v. Bordley*, 2000 WL 706788 (Del.Super.2000); *State v. Jenkins* 741 S.W.2d 767, 768–770 (Mo.Ct.App.1987) (upholding burglary conviction for entry into enclosed screen porch despite unsuccessful attempt to open inner door to home); *Davis v. State*, 938 P.2d 1076 (Alaska App.1997); *People v. Wise*, 25 Cal.App.4th 339, 30 Cal.Rptr.2d 413, 416–18 (1994); *Johnson v. Commonwealth*, 875 S.W.2d 105, 106–07 (Ky.App.1994); *People v. McIntyre*, 218 Ill.App.3d 479, 161 Ill.Dec. 187, 578 N.E.2d 314 (1991) (screened porch attached to house was part of "living quarters" and thus was a "dwelling"); *State v. Lawrence*, 572 So.2d 276, 278–79 (La.App.1990)(particular back porch was part of the residence; porch was fully enclosed screened porch underneath the main roof); *State v. Watts*, 76 N.C.App. 656, 334 S.E.2d 68, 70 (1985); *People v. Lewoc*, 101 A.D.2d 927, 475 N.Y.S.2d 933, 934 (1984)(fully enclosed porch, with windows and walls of wooden construction running length of the house); *State v. Gatewood*, 169 Kan. 679, 221 P.2d 392 (1950) (porch which was screened in and connected to kitchen by door and window). Similarly, other courts have held appurtenant structures to a home, even if not directly accessible from the home, are nonetheless part of the "dwelling" as contemplated by burglary statutes. *See State v. Maykoski*, 583 N.W.2d 587 (Minn.1998) (basement); *People v. Ingram*, 40 Cal.App.4th 1397, 48 Cal.Rptr.2d 256 (5th Dist.1995) (garage attached to house, even though not connected by an inside doorway to the inhabited part of house); *People v. Moreno*, 158 Cal.App.3d 109, 204 Cal.Rptr. 17 (1984)("given that garage was under the same roof, functionally interconnected with, and immediately contiguous to other portions of the house, simple logic would suffer were we to leap over this interrelationship to a conclusion that a garage is not part of a dwelling because no inside entrance connects the two").

We find the screened porch is part of the "dwelling." Accordingly, Stone was not entitled to a directed verdict.

## 2. REMOVAL OF JUROR DURING SENTENCING

■ Stone next asserts the trial court abused its discretion in removing Juror Clydie Thompson during sentencing. We agree.

At sentencing, the state called Stone's aunt, Bernice Perry, as a witness. When Perry was placed on the witness stand, Juror Thompson indicated to the court that she knew Ms. Perry. Although Perry had been announced as a witness at the start of voir dire, Thompson did not know her name. Thompson had lived down the street from Perry five or six years earlier, and they were casual acquaintances only. Thompson indicated her acquaintance would not affect her ability to be fair and impartial.

The solicitor objected to Thompson's continued participation contending it would be difficult for her to impose a death sentence on a former acquaintance's nephew. The court removed Juror Thompson and replaced her with the second alternate juror. We find this was error.

In *State v. Woods*, 345 S.C. 583, 587–88, 550 S.E.2d 282, 284 (2001), we recently stated:

When a juror conceals information inquired into during voir dire, a new trial is required only when the court finds the juror intentionally concealed the information, and that the information concealed would have supported a challenge for cause or would have been a material factor in the use of the party's peremptory challenges. *Thompson v. O'Rourke*, 288 S.C. 13, 15, 339 S.E.2d 505, 506 (1986). Where a juror, without justification, fails to disclose a relationship, it may be inferred, nothing to the contrary appearing, that the juror is not impartial. On the other hand, where the failure to disclose is innocent, no such inference may be drawn. *State v. Savage*, 306 S.C. 5, 409 S.E.2d 809 (Ct.App.1991).

Although the present case does not involve a new trial, *Woods* is instructive. It is patent here that Juror Thompson's failure to disclose her acquaintance with Perry was innocent. Moreover, we find her scant acquaintance would neither have supported a challenge for cause nor would it have been a material factor in the state's exercise of its peremptory challenges. Thompson clearly indicated her former acquaintance with a witness whose name she did not even know, would not

have affected her in any way. Accordingly, we hold the trial court abused its discretion in removing her.

### 3. CHARGE ON STATUTORY MITIGATORS

 Stone next asserts reversible error in the trial court's refusal to charge, at sentencing, the statutory mitigating factors set forth in S.C.Code Ann. § 16-3-20(C)(b)(6) and (7) (Supp.2001), to wit, the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired, and the age or mentality of the defendant at the time of the crime. He claims the charges were mandated due to evidence that he was intoxicated at the time of the crime. We agree.

In *State v. Pierce*, 289 S.C. 430, 435, 346 S.E.2d 707, 711 (1986), *overruled on other grounds, State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991), we held that "the trial judge was required by law to instruct the jury on statutory mitigating circumstances 2, 6, and 7, given the evidence showing Pierce was using drugs and extremely intoxicated during the commission of the crime. **The failure to instruct is not harmless error.**" (Emphasis supplied). Thereafter, in *State v. Plemmons*, 296 S.C. 76, 78, 370 S.E.2d 871, 872 (1988), we held the specific statutory mitigating circumstances of subsections (2), (6), and (7) need not be submitted to the jury if the trial court gives a specific charge on the defendant's voluntary intoxication as mitigating circumstance.[3]

We have specifically rejected the contention that a charge on one mitigator is sufficient to cover the others. *State v. Young*, 305 S.C. 380, 409 S.E.2d 352 (1991) (where there is evidence the defendant was intoxicated at the time of the crime, the trial judge is **required** to submit the statutory mitigating circumstances in § 16-3-20(C)(b)(2), (6) and (7));[4] *State v. Plemmons, supra.* We adhere to these precedents and hold the trial court erred in refusing to charge these statutory mitigating circumstances.

---

3. Here, there was no such charge. To the contrary, the jury was specifically charged that voluntary intoxication was not a defense.

4. In *Young*, the trial judge had charged the jury on the mitigators in subsections 6 & 7, but had not charged subsection 2. We held this was error.

■ Further, we find the error was exacerbated by the trial court's supplemental instructions to the jury. After the jury had been charged at sentencing, the court specifically called them back for the purpose of reminding them of its earlier instruction, during guilt phase, that "voluntary intoxication is not a defense to criminal act or actions." We find reasonable jurors would clearly have understood this instruction as preventing them from considering evidence of Stone's intoxication in mitigation. To the extent the charge prohibited the jury from considering the mitigating circumstance of Stone's intoxication, it violated the Eighth Amendment. *See Payne v. Tennessee,* 501 U.S. 808, 822, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), *citing Eddings v. Oklahoma,* 455 U.S. 104, 114, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982)(Eighth Amendment prohibits state from limiting sentencer's consideration of "any relevant mitigating evidence" which could cause the jury to decline to impose the death penalty). Accordingly, the trial court's refusal to instruct on the statutory mitigating circumstances of S.C.Code Ann. § 16–3–20(C)(b)(6) & (7) and its instruction concerning voluntary intoxication require reversal.

### 4. PAROLE INELIGIBILITY CHARGE

■ At sentencing, during its closing argument, the state argued that Stone is "going to be a problem in the future—a problem in the future in the prison system." The solicitor went on to argue that "throughout his life, he has been a problem. He has not been willing to obey the laws of society." In talking about Stone's 1987 burglary convictions, the solicitor stated, "This guy who wants you to give him mercy this time. He got thirty years. Then you see what happened after that and how he manipulated the system and [eventually got paroled] ... and when he is paroled he signs and acknowledges ... [he] may not possess any weapon whatsoever ... a condition of parole ... Was he able to abide by that rule? This guy that wants you to show him mercy now?.... He is not going to follow the rules. He hasn't done it in the past. He's not going to do it in the future." The solicitor went on to argue "You make sure that no correctional officer—or somebody else if he were to escape or something—nobody else is up here like this Kubala family ..." Finally, the solicitor argued, "I'm asking you to carry out ... a criminal justice

system that works and deters criminals, deters Bobby Wayne Stone from ever doing anything like this again to any correctional officer or anyone else."

After the court charged the jury, defense counsel requested an instruction concerning "life imprisonment, life in prison without parole." The court then called the jury back in and instructed that "[u]nder our law life imprisonment means that a person will be—will serve the balance of his life in prison, okay?" Stone asserts the trial court erred in failing to instruct the jury that if sentenced to life imprisonment, he would be **ineligible for parole.** We agree.

Under the recent precedents of *Kelly v. South Carolina,* 534 U.S. 246, 122 S.Ct. 726, 151 L.Ed.2d 670 (2002) and *Shafer v. South Carolina,* 532 U.S. 36, 121 S.Ct. 1263, 149 L.Ed.2d 178 (2001), Stone was entitled to an instruction that if sentenced to life imprisonment, he would be ineligible for parole. In *Kelly,* the United States Supreme Court held that where a capital defendant's future dangerousness is at issue, and the only sentencing alternative to death available to the jury is life imprisonment without parole, due process entitles the defendant to inform the jury of his parole ineligibility, either by jury instruction or in arguments by counsel. The *Kelly* court specifically noted that arguments by counsel in *Shafer* to the effect that the defendant "would die in prison" or would "spend his natural life there" as well as the trial judge's instructions that "life imprisonment means until the death of the defendant" were insufficient to convey a clear understanding to Shafer's parole ineligibility. 122 S.Ct. at 733–34. The Court also noted that the fact that the jury did not request further instructions concerning parole ineligibility was irrelevant. 122 S.Ct. at 733. Finally, the *Kelly* court noted that "evidence of future dangerousness in prison can raise a strong implication of 'generalized ... future dangerousness'.... A jury hearing evidence of a defendant's demonstrated propensity for violence reasonably will conclude that he presents a risk of violent behavior, whether locked up or free, and whether free as a fugitive or as a parolee." 122 S.Ct. at 731.

Here, it is patent the state argued Stone's future dangerousness to the jury, both in the context of his danger in prison and the possibility he could escape in the future. Moreover,

notwithstanding counsel and the court told the jury Stone would spend the rest of his life in prison, these statements do not clearly convey to the jury the fact that Stone would be ineligible for parole as required by *Kelly*. Accordingly, the trial court's failure to instruct that Stone would be ineligible for parole if sentenced to life imprisonment requires reversal.

Stone's remaining issue is affirmed pursuant to SCACR, Rule 220(b) and the following authorities: Stone's issue 3– *State v. Von Dohlen*, 322 S.C. 234, 471 S.E.2d 689 (1996) (admission of expert testimony is within discretion of trial court).[5]

Stone's convictions are affirmed, as are his sentences for burglary and possession of a weapon. The matter is remanded for a new sentencing proceeding on his murder conviction.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**

TOAL, C.J., MOORE, BURNETT, and PLEICONES, JJ., concur.

---

5. In conjunction with his first issue, Stone asserted that, if he was entitled to a directed verdict on the burglary charge, then the trial court's charge to the jury that it could not convict him of involuntary manslaughter if it found him guilty of burglary was error. In light of our holding that Stone was not entitled to a directed verdict on the burglary charge, this claim is moot.