626 S.E.2d 74

**The STATE, Respondent,**

v.

**Craig MIDDLETON, Appellant.**

**No. 4076.**

Court of Appeals of South Carolina.

Submitted Dec. 1, 2005.

Decided Jan. 23, 2006.

Assistant Appellate Defender Eleanor Duffy Cleary, of Columbia, for Appellant.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney

General Salley W. Elliott, and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Randolph Murdaugh, III, of Hampton, for Respondent.

STILWELL, J.:

Craig Middleton was convicted of second-degree burglary and safecracking and sentenced to concurrent terms of ten years. Middleton appeals the burglary conviction, arguing he was entitled to a directed verdict. We affirm.[1]

## FACTS

On a Saturday night in April 2003, Officer Robert Bilyard, a police officer for the Town of Port Royal, responded to a telephone call about a burglar alarm at Henry J. Lee Distributors.[2] Bilyard and another officer arrived at the scene and met Senis Hodges, a Lee employee. The door to the main building was unlocked, and there was no sign of forced entry. The alarms and telephones in the main office were inoperable, and the bolts that secured the office safe to the floor had been cut. Hodges testified the safe contained a very large sum of money including over $100,000 in proceeds from sales at a golf tournament. The contents of the safe were undisturbed, except pieces of the bolts that had been cut were pushed up into the safe.

As Bilyard and Hodges left the building, they noticed the metal cover to the crawl space entrance was not in place. The crawl space does not provide direct access to the building. Officer Ronald Wekenmann, also of the Town of Port Royal police department, arrived on the scene and, as he approached the entrance to the crawl space, he saw Middleton hiding underneath the building near the crawl space trapdoor. Wekenmann apprehended Middleton, who was wearing torn latex gloves and was carrying a ski mask.

Another police officer investigated the crawl space and found numerous cut wires, torn insulation, a piece of a safe bolt, and a blue backpack containing latex gloves, wire cutters,

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. Lee is a beer distributor.

and numerous other tools. Outside the crawl space, the officer found a flashlight, keys, and a cell phone. After being advised of his rights, Middleton stated: "You caught me; I did what I did and that's all I have to say."

At trial, Middleton moved for a directed verdict on the burglary charge arguing there was no evidence of entry into the office building. The State argued the crawl space was part of the curtilage of the building. The trial court found there was circumstantial evidence of a break-in into the office, the crawl space was part of the building, and Middleton was not entitled to a directed verdict on the burglary charge.

## STANDARD OF REVIEW

In reviewing the denial of a directed verdict motion, the evidence is viewed in the light most favorable to the State to determine if any direct or substantial circumstantial evidence exists that reasonably tends to prove the defendant's guilt or from which guilt may be fairly and logically deduced. *State v. Pinckney*, 339 S.C. 346, 349, 529 S.E.2d 526, 527 (2000). The court is concerned with the existence or nonexistence of evidence, not its weight. *Id.*

## LAW/ANALYSIS

■ Middleton argues the trial court erred in denying his motion for directed verdict on the burglary charge because the crawl space underneath the building does not meet the statutory definition of a "building" for purposes of the burglary statute. We disagree.

Middleton was charged with second-degree burglary in violation of South Carolina Code section 16–11–312(B), which provides in part:

(B) A person is guilty of burglary in the second degree if the person enters a building without consent and with intent to commit a crime therein, and either:

. . .

(3) The entering or remaining occurs in the nighttime.

S.C.Code Ann. § 16–11–312(B) (2003). As relates to the burglary statute, a building is defined in section 16–11–310:

For purposes of 16–11–311 through 16–11–313:

(1) "Building" means any structure, vehicle, watercraft, or aircraft:

(a) Where any person lodges or lives; or

(b) Where people assemble for purposes of business, government, education, religion, entertainment, public transportation, or public use or where goods are stored. Where a building consists of two or more units separately occupied or secured, each unit is deemed both a separate building in itself and a part of the main building. . . .

S.C.Code Ann. § 16–11–310 (2003). A "building" is a "[s]tructure designed for habitation, shelter, storage . . . and the like." Black's Law Dictionary 194 (6th ed. 1990).

▌ Because we find no South Carolina case directly on point, we look to general rules of statutory construction. Criminal statutes must be strictly construed against the State. *State v. Myers*, 313 S.C. 391, 393, 438 S.E.2d 236, 237 (1993). However, words in a statute must be given their plain and ordinary meaning. *Id.* Our courts take a common sense approach in defining the terms associated with the burglary statutes. *See id.* ("[B]y including 'building' the definition of 'dwelling house' is broad enough to include a boat in which a person lodges."). *See also State v. Stone*, 350 S.C. 442, 446, 567 S.E.2d 244, 246 (2002) (finding a screened porch meets the statutory definition of a dwelling). Applying a common sense meaning to the words used to define a "building" for purposes of the burglary statute leads to the inescapable conclusion that the crawl space is a part of the main building and therefore fits within the statutory definition of a building.

We find support from other jurisdictions that have found similar spaces constitute a building. *See Garrett v. State*, 259 Ga.App. 870, 578 S.E.2d 460, 463 (2002) (finding a shelter with a contiguous wall used for storage for the main building is part of the main building); *State v. Brower*, 127 Iowa 687, 104 N.W. 284, 285 (Iowa 1905) (holding the word "building," within its accepted and legal signification, includes the cellar or basement); *State v. Couch*, 44 Wash.App. 26, 720 P.2d 1387, 1389–90 (1986) (upholding conviction of second-degree burglary of building; finding basement of building part of the building as it was enclosed, associated with the building, and used in connection with the building—statute, however, pro-

vided broader definition of building). *See generally* Ghent, Jeffrey F., Annotation, *What is "Building" or "House" Within Burglary or Breaking and Entering Statute,* 68 A.L.R.4th 425 (1989 & Supp.2004).

In this case, the crawl space was underneath the office building and enclosed but for an opening concealed with a metal cover. Under the facts of this case, we find the crawl space to be an integral part of the structure of the building and the trial court did not err in denying Middleton's motion for directed verdict. For the foregoing reasons, the conviction is

**AFFIRMED.**

KITTREDGE and WILLIAMS, JJ., concur.