664 S.E.2d 477

**The STATE, Petitioner,**

v.

**Jacqueline MEKLER, Respondent.**

No. 26521.

Supreme Court of South Carolina.

Heard May 8, 2008.

Decided July 14, 2008.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Melody J. Brown, all of Columbia, and David Michael Pascoe, Jr., of Orangeburg, for Petitioners.

Deputy Chief Appellate Defender for Capital Appeals Robert M. Dudek, of South Carolina Commission on Indigent Defense, Division of Appellate Defense, of Columbia, for Respondents.

Justice PLEICONES.

A jury convicted Jacqueline Mekler (Mekler) of murder, and she received a sentence of thirty years. The Court of Appeals affirmed in part, reversed in part, and remanded for a new trial. *State v. Mekler*, 368 S.C. 1, 626 S.E.2d 890 (Ct.App.

2005). We granted the State's petition for certiorari and now affirm.

## FACTS

Mekler and her neighbor, Robette Spires (Spires), were visiting on Mekler's front porch one evening when Spires' husband, Bubba, (Victim) drove his truck into Mekler's yard. Victim began screaming and yelling at Spires because Spires was not at home and because Spires had not called him. Mekler and Victim began yelling at each other, and Mekler asked Victim to leave. Victim left in his truck and drove to Spires' residence, which was one block away from Mekler's home.[1]

A few minutes later, Victim walked back to Mekler's house. According to Mekler, Victim approached the porch, yelling and screaming in the same manner as before he left. Mekler's dog was attached to a chain on the porch and began barking at Victim. The chained dog then ran out on the porch steps towards Victim, halting his progress. Mekler grabbed the dog and noticed a knife in Victim's hand. Victim told Mekler the knife was for the dog. After subduing the dog, Mekler stepped inside her house and grabbed her shotgun, which she had placed near the front door after Victim initially left.

Mekler testified that after she stepped on the porch with the shotgun, she continued to ask Victim to leave, but he continued to stand in the yard near the steps with the knife and threatened to come up on the porch and get Spires. Mekler testified that she pulled the hammer back on the shotgun and positioned the gun at her hip to do so. Mekler recounted that when she cocked the gun, the Victim leaned and the gun fired, but she did not remember pulling the trigger. In three separate statements to various law enforcement personnel and throughout her trial testimony, Mekler maintained that she did not intentionally pull the trigger.

At trial, defense counsel requested a jury charge on self-defense, accident, and involuntary manslaughter. The trial court refused to charge the jury on involuntary manslaughter

---

1. Although Spires and Victim were married, they lived in separate residences.

and accident. The jury convicted Mekler of murder, and the judge sentenced her to thirty years imprisonment. The Court of Appeals reversed on the grounds that: (1) the trial court failed to charge involuntary manslaughter; and (2) the trial court failed to admit specific details of a prior act of violence by Victim.

## ISSUES

I. Did the Court of Appeals err in reversing Mekler's conviction due to the failure to charge the jury on involuntary manslaughter?

II. Did the Court of Appeals err in reversing Mekler's conviction based on the trial judge's denial of Mekler's request to introduce specific details of a prior domestic violence incident between Spires and Victim?

## ANALYSIS

I. Involuntary manslaughter charge

■ The State argues the Court of Appeals erred in reversing respondent's conviction based on the trial judge's failure to charge the jury on involuntary manslaughter. We disagree.

■ Involuntary manslaughter is defined as (1) the unintentional killing of another without malice but while engaged in an unlawful activity not naturally tending to cause death or great bodily harm; or (2) the unintentional killing of another without malice but while engaged in a lawful activity with reckless disregard for the safety of others. *State v. Burriss,* 334 S.C. 256, 264–265, 513 S.E.2d 104, 109 (1999). The negligent handling of a loaded gun will support a charge of involuntary manslaughter. *Id.* (citing *State v. White,* 253 S.C. 475, 171 S.E.2d 712 (1969)). A trial court should refuse to charge the lesser-included offense of involuntary manslaughter only where there is no evidence the defendant committed the lesser offense. *State v. Crosby,* 355 S.C. 47, 51, 584 S.E.2d 110, 112 (2003).

We hold that the Court of Appeals correctly held that there was evidence to support a finding that Mekler was lawfully armed in self-defense and did not intentionally discharge the shotgun. Moreover, evidence exists to support a jury finding that Mekler's recklessness caused the gun to fire.

The following evidence adduced at trial supports the involuntary manslaughter charge: (1) the three statements given by Mekler and introduced at trial in which Mekler stated she did not remember pulling the trigger or the shotgun discharging; (2) Mekler's trial testimony in which she stated she did not remember pulling the trigger and had to be told by Spires that she shot Victim; (3) Mekler's trial testimony in which she stated the gun was positioned at her hip so she could cock the hammer back and that her finger must have slipped on the trigger, causing the gun to fire suddenly; (4) testimony by a neighbor who looked out of her window right before the shot was fired and saw one of Mekler's arms down at her side and the other waving when she talked; [2] and (5) Mekler's insistence at trial that she did not intend to shoot Victim and that she was shocked when the gun fired immediately after she cocked the hammer.

Accordingly, the evidence supports a finding that Mekler, lawfully armed in self-defense, unintentionally shot Victim while negligently handling the shotgun when her finger slipped on the trigger after resting the gun on her hip to cock it. *See Burriss, supra* (negligent handling of loaded gun will support a finding of involuntary manslaughter).

 Finally, a self-defense charge and an involuntary manslaughter charge are not mutually exclusive, as long as there is any evidence to support both charges. *See Casey v. State,* 305 S.C. 445, 409 S.E.2d 391 (1991) (error by trial court in not charging involuntary manslaughter, even though the trial court charged murder, voluntary manslaughter, accident, and self-defense); *Crosby, supra* (improper to hold that any evidence of an intentional shooting negates evidence from which any other inference may be drawn); *State v. Light,* Op. No. 26519, 378 S.C. 641, 664 S.E.2d 465 (S.C. Sup.Ct. filed July 14, 2008) (Shearouse Adv. Sh. 29 at p. 42).

In this case, there was evidence from which the inference could be drawn that Mekler intentionally shot Victim in self-defense, and there was evidence that Mekler unintentionally shot Victim while acting in reckless disregard of the safety of

---

**2.** This supports Mekler's testimony that the gun was at her hip when it discharged.

others by negligently handling a loaded shotgun. The jury should have been allowed to determine how the shooting occurred, and the Court of Appeals did not err by reversing and remanding for a new trial due to the trial court's failure to charge involuntary manslaughter.

II. Evidence of prior act of Victim

Because we affirm the Court of Appeals' decision to grant Mekler a new trial based on failure to charge involuntary manslaughter, it is unnecessary to address the second issue. Whether this issue will arise on retrial and its resolution will depend upon the evidence and testimony presented, and it will be for the trial judge's consideration.

### CONCLUSION

We hold that Mekler was entitled to an involuntary manslaughter charge because evidence existed to support a finding that she was lawfully armed in self-defense and that her reckless handling of the shotgun resulted in the death of Victim. Moreover, a charge of self-defense and a charge of involuntary manslaughter are not mutually exclusive. The decision of the Court of Appeals is

**AFFIRMED.**

MOORE, Acting Chief Justice, WALLER, J., and Acting Justices JAMES E. LOCKEMY and J. MICHELLE CHILDS, concur.