**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Jamaal Hinson, Appellant.

Appellate Case No. 2011-203569

---

Appeal From Richland County
DeAndrea G. Benjamin, Circuit Court Judge

---

Unpublished Opinion No. 2014-UP-113
Heard November 14, 2013 – Filed March 19, 2014

---

**AFFIRMED**

---

Chief Appellate Defender Robert M. Dudek, of Columbia, and Reid T. Sherard, of Nelson Mullins Riley & Scarborough, LLP, of Greenville, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Donald J. Zelenka, and Solicitor Daniel E. Johnson, all of Columbia, for Respondent.

---

**PER CURIAM:**  Appellant Jamaal Hinson appeals his conviction for murder, arguing the trial court erred in:  (1) removing a juror who unintentionally concealed his affiliation with a witness; and (2) declining to instruct the jury on involuntary manslaughter.  We affirm.

## FACTS/PROCEDURAL HISTORY

This case arises from the shooting death of Anthony Salley (Victim) at the Vineyard Crossing subdivision in Blythewood, South Carolina.   Earlier on the day of the shooting, Appellant exchanged threats with Victim and Victim's friend, Richard Thomas, as he drove by Victim's house.  Appellant testified that he subsequently armed himself with a gun because he knew Thomas regularly carried a gun.  According to Appellant, he later approached Victim's driveway in an attempt to complete a drug transaction with his friend, Devan Bailey.  Upon Appellant approaching the driveway, an altercation immediately began between Appellant and Victim.  At some point during the altercation, Appellant drew his gun; however, Victim successfully knocked the gun from Appellant's hand.  The two men then engaged in a fist-fight, which Appellant admittedly "won."  After winning the fight, Appellant immediately retrieved his weapon.  As Victim got up off the ground, he sustained a fatal gunshot wound to the abdomen from Appellant's gun.  Appellant claimed that he was startled when Victim moved and faced him and that the gun fired accidentally.

The case proceeded to trial on November 14, 2011.  During *voir dire*, the trial judge read the name of every anticipated witness and asked each witness present to stand upon hearing his or her name called.  After reading the names from the witness list, the trial judge asked potential jurors the following questions:

> Question 1:  [I]s there anyone related by blood or
> marriage or has [sic] a close personal or social
> relationship with any of the witnesses I have called?
>
> Question 2:  Does any member of the jury panel know of
> any reason whatsoever why he or she should not serve as
> a juror in this case with particular emphasis placed on
> your ability to be fair and impartial to both the State and
> the Defendant?  If so please stand.

Juror 226, Guy Rodgers, did not respond to either question, and was subsequently placed on the jury.

On the second day of trial, the State called Jarrod Crudup as a witness regarding Appellant's whereabouts the night of the shooting. Crudup was not present in the courtroom on the first day of trial when the trial judge read the names on the witness list to potential jurors. Crudup testified that he knew Victim because they lived in the same neighborhood. Crudup also stated that he "knew of" Appellant through friends and that Appellant entered his house "uninvited" on the day of the shooting.

At the beginning of the third day of trial, the trial judge informed counsel that she had spoken to Juror 226, who had informed her that he had not recognized the names of any of the witnesses because he did not know them, but recognized some of their faces from playing basketball with them at a local gymnasium. After the trial judge made this announcement, Juror 226 stated that his acquaintance with some of the witnesses would not affect his ability to be fair and impartial. The State then inquired, "which witnesses?" In response, Juror 226 indicated the only witness he had knowledge of was Crudup. When specifically questioned as to whether his knowledge of Crudup would affect his ability to be fair and impartial, Juror 226 answered "No. I don't even know him."

After Juror 226 left the courtroom, the State asked that he be removed from the jury, expressing concern that Juror 226 had a close connection with a friend of Appellant. The State went on to assert that had it known about Juror 226's connection to Crudup, the matter would have been a consideration in their use of strikes. The trial judge recognized that Juror 226 did not intentionally conceal his relationship with Crudup. Nevertheless, the trial judge removed Juror 226 from the jury "out of an abundance of caution," citing Juror 226's initial disclosure that he knew of "some of the witnesses."

At the conclusion of trial, the jury found Appellant guilty of murder. The trial judge sentenced Appellant to thirty years' imprisonment. This appeal followed.

**LAW/ANALYSIS**

**I. Juror Dismissal**

Appellant argues the trial court committed reversible error in removing Juror 226 when it was uncontested that Juror 226 did not intentionally conceal his knowledge of the identity of a witness during *voir dire*. We disagree.

In *State v. Woods*, 345 S.C. 583, 550 S.E.2d 282 (2001), our supreme court addressed whether a post-verdict discovery that a juror had an affiliation with a victims' rights organization warranted a new trial. The court in *Woods* set forth the following test for the removal of a juror for concealment of information inquired into during *voir dire*:

> When a juror conceals information inquired into during
> *voir dire*, a new trial is required only when the court
> finds the juror intentionally concealed the information,
> *and* that the information concealed would have supported
> a challenge for cause or would have been a material
> factor in the use of the party's peremptory challenges.

*Id.* at 587, 550 S.E.2d at 284 (emphasis added). The court explained "intentional concealment occurs when the question presented to the jury on *voir dire* is reasonably comprehensible to the average juror and the subject of the inquiry is of such significance that the juror's failure to respond is unreasonable." *Id.* at 588, 550 S.E.2d at 284. "Unintentional concealment, on the other hand, occurs where the question posed is ambiguous or incomprehensible to the average juror, or where the subject of the inquiry is insignificant or so far removed in time that the juror's failure to respond is reasonable under the circumstances." *Id.*

In *State v. Stone*, our supreme court cited to *Woods* in holding that the trial court abused its discretion by removing a juror and replacing her with an alternate. 350 S.C. 442, 448-49, 567 S.E.2d 244, 247-48 (2002). In *Stone*, the State called the defendant's aunt as a witness during the penalty phase of a capital trial. *Id.* at 448, 567 S.E.2d at 247. Once the witness took the stand, one of the jurors realized she knew the witness. *Id.* Although the witness's name had been announced at the beginning of the *voir dire*, the juror did not know the witness's name. *Id.* The juror indicated she had lived down the street from the witness some five or six years earlier, but they were casual acquaintances only. *Id.* She further stated that her acquaintance with the witness would not affect her ability to be fair and impartial. *Id.* In spite of the juror indicating that she could be impartial, the trial court removed the juror and replaced her with an alternate. *Id.* Our supreme court

recognized that *Woods* was distinguishable in that it dealt with a new trial matter; nevertheless, it found *Woods* "instructive," noting:

> It is patent here that [the juror's] failure to disclose her acquaintance with [the witness] was innocent. Moreover, we find her scant acquaintance would neither have supported a challenge for cause nor would it have been a material factor in the state's exercise of its peremptory challenges. [The juror] clearly indicated her former acquaintance with a witness whose name she did not even know, would not have affected her in any way

*Id.* at 448-49, 567 S.E.2d at 247-48.

The court in *Stone* ruled that the trial court abused its discretion in removing the juror because neither of the two *Woods* criteria supporting removal were present. *Id.* at 449, 567 S.E.2d at 248. In *State v. Burgess*, this court cited to *Stone* in affirming the trial court's decision not to remove a juror. 391 S.C. 15, 19-20, 703 S.E.2d 512, 514 (Ct. App. 2010), *cert. denied* (May 25, 2012). The *Burgess* court noted the lack of either of the *Woods* criteria "would have independently rendered the trial judge's removal of the *Stone* juror erroneous." *Id.* at 19, 703 S.E.2d at 514.

On appeal, Appellant argues this court should find the trial court abused its discretion in removing Juror 226 because it is uncontested that the first *Woods* criterion was absent. Appellant further contends that pursuant to *Stone*, the erroneous removal of a juror is per se reversible error. The State argues that Appellant's reliance on *Stone* is misplaced because, although *Stone* recognized legal error in a similar factual scenario, *Stone* did not indicate a prejudice inquiry is not required when dealing with a juror's unintentional concealment during *voir dire*.

*Stone* does not necessarily support Appellant's assertion that the removal of a juror who unintentionally concealed information inquired into during *voir dire* requires automatic reversal. In *Stone*, the appellant challenged his conviction on several grounds, including the dismissal of a juror who unintentionally concealed her acquaintance with a witness and indicated such acquaintance would not affect her ability to be fair and impartial. 350 S.C. at 448, 567 S.E.2d at 247. Although the court in *Stone* determined that the removal of the juror was an abuse of discretion, this determination was not crucial to its ultimate holding. The *Stone* court held the

trial court's failure to instruct the jury on mitigating circumstances, as well as the trial court's failure to give a parole ineligibility charge "require[d] reversal." *Id*. at 450, 452, 567 S.E.2d at 248, 249.

Neither *Stone* nor *Burgess* address whether the erroneous removal of a juror who unintentionally concealed information during *voir dire* requires automatic reversal. However, it is well-recognized that most trial errors, even those that violate a defendant's constitutional rights, are subject to harmless error analysis and do not automatically require reversal of a conviction. *State v. Mouzon*, 326 S.C. 199, 204, 485 S.E.2d 918, 921 (1997). Our courts have determined "[t]here is no right to be tried by a jury composed of particular individuals." *State v. McDaniel*, 275 S.C. 222, 224, 268 S.E.2d 585, 586 (1980); *State v. Rogers*, 263 S.C. 373, 382, 210 S.E.2d 604, 609 (1974). In accordance with this principle, South Carolina case law concerning alternate juror participation directs the appellate court to determine whether an alternate juror's participation affected the outcome of the trial. *See McDaniel*, 275 S.C. at 223-24, 268 S.E.2d at 586 (stating the irregular procedure employed by the trial court in excusing a juror and impaneling an alternate at the conclusion of testimony on the basis that the juror was observed making improper remarks and gestures was not sufficient to deprive the defendant of his right to a jury trial, where the alternate juror had been approved by both sides at the inception of trial, and there was no showing that defendant withdrew his approval at the time of the substitution); *State v. Williams*, 321 S.C. 455, 459-60, 469 S.E.2d 49, 52 (1996) (finding "[a]s in *McDaniel*" there was no prejudice to the defendant from the seating of an alternate juror where the trial court removed a juror who was seen shaking the hand of a pastor who was seated at defense counsel's table and who had assisted defense counsel in the case).

Even if the removal of Juror 226 was error pursuant to *Stone* and *Burgess*, we find such error harmless. Here, the regular jurors and the alternate jurors were treated similarly in all respects. Juror 226 was replaced with an alternate who was present throughout the proceeding, heard the same evidence, and was subject to the same instructions of law as the regular jurors. *See* S.C. Code Ann. § 14-7-1340 (1976 & Supp. 2013) (providing alternate jurors "shall have the same opportunities for seeing and hearing the proceedings in the case, and shall take the same oath as the jurors already sworn and shall attend at all times the trial of the cause in company with the other jurors"). Furthermore, Appellant does not contend that the alternate was unqualified or had not been approved by both sides during *voir dire*. *See* S.C. Code Ann. § 14-7-320 (Supp. 2013) (stating alternate jurors "must be drawn from the same source, in the same manner, have the same qualifications, and be subject

to the same examination and challenge as the jurors already sworn"); *see also* *McDaniel*, 275 S.C. at 224, 268 S.E.2d at 586.

## II.  Involuntary Manslaughter Charge

Appellant also argues the trial court erred in refusing to charge the jury on involuntary manslaughter.  We disagree.

Involuntary manslaughter is defined as (1) the unintentional killing of another without malice but while engaged in an unlawful activity not naturally tending to cause death or great bodily harm; or (2) the unintentional killing of another without malice but while engaged in a lawful activity with reckless disregard for the safety of others.  *State v. Mekler*, 379 S.C. 12, 15, 664 S.E.2d 477, 478 (2008).  A trial court should refuse to charge the lesser-included offense of involuntary manslaughter only where there is no evidence the defendant committed the lesser offense.  *Id.* at 15, 664 S.E.2d at 479.

Here, Appellant, a convicted felon, acted in violation of the law by carrying a firearm.  *See* S.C. Code Ann. § 16-23-500 (Supp. 2013).  In addition to being in unlawful possession of a firearm, there is no evidence to suggest Appellant was without fault in bringing on the difficulty.  Earlier on the day of the shooting, Appellant exchanged murderous threats with Victim in front of Victim's house.  In spite of this contentious history, Appellant approached Victim's driveway while carrying a gun.  *See State v. Smith*, 391 S.C. 408, 414, 706 S.E.2d 12, 15-16 (2011) (holding the trial court properly refused to charge the jury on involuntary manslaughter where there was no evidence to indicate that the appellant lawfully armed himself in self-defense given that the appellant engaged in a drug deal, while armed with a loaded gun, knowing the victim owed him money from a previous drug transaction); *State v. Cabrera-Pena*, 361 S.C. 372, 383-84, 605 S.E.2d 522, 528 (2004) (finding the appellant was not entitled to an involuntary manslaughter charge because his conduct in arming himself with a deadly weapon and waiting to confront the victim was not a lawful activity and, his conduct, in turn, created the volatile circumstances that led to the victim's death).  Accordingly, the trial court did not commit error in denying Appellant's request for a charge on involuntary manslaughter.

For the foregoing reasons, Appellant's conviction is **AFFIRMED.**

**HUFF, GEATHERS, and LOCKEMY, JJ., concur.**