732 S.E.2d 175

**The STATE, Respondent,**

v.

**Bennie GOLSTON, Appellant.**

**No. 4984.**

Court of Appeals of South Carolina.

Heard May 13, 2012.

Decided June 6, 2012.

Rehearing Denied Sept. 13, 2012.

394

Appellate Defender LaNelle Cantey DuRant, of Columbia, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Deborah R.J. Shupe, all of Columbia; and Solicitor Donald V. Myers, of Lexington, for Respondent.

FEW, C.J.

Bennie Golston appeals his conviction for criminal domestic violence of a high and aggravated nature (CDVHAN). His primary contention on appeal is that the trial court erred in declining to charge the jury on criminal domestic violence (CDV) as a lesser-included offense. We affirm.

## I. Facts and Procedural History

Golston and the victim lived together "off and on" for approximately five years. On the morning of March 22, 2008, a neighbor found the victim lying on a mattress in her house. Her breathing was shallow and her face was so swollen that she could not open her eyes. The neighbor called 911, and deputies and paramedics came to the victim's house. According to the deputies who responded to the scene, the victim told them Golston attacked her the previous night using his fists, a log, and a hatchet. The victim's adult son also came to her house. Her face was so swollen that he did not recognize her. The son testified:

> I went into the house, went to the back, and I saw my momma laying there. That was my momma but that wasn't my momma. I wasn't prepared for that. I worked at Rocket Rescue[1] for about two years, and I've seen wrecks with fatalities. I've never seen anybody's face swollen like that. If she hadn't talked, I wouldn't have known that was my momma.

---

1. It is not clear from the record what the son meant by "Rocket Rescue," but it appears the phrase is a colloquialism for emergency medical services companies.

The paramedics drove the victim to a hospital, where doctors ordered a CAT scan and a blood test for internal trauma. Although the CAT scan revealed no bone fractures and the blood test results were normal, a nurse testified "the doctor documented that she was so swollen he couldn't do the type of exam that he wanted to do to make sure that she could have vision." The victim left the hospital that night with her children. Over the next few days, she continued to have difficulty breathing and could not feed or bathe herself. The swelling continued to prevent her from opening both of her eyes. She was able to open her right eye after four or five days, but she could not open her left eye for about a week and a half. When she finally was able to open her eyes and doctors examined them, she began wearing glasses for the first time.

Golston was indicted and tried for CDVHAN. At trial, the State and Golston presented conflicting accounts of the incident. The victim testified Golston came home between 11:00 p.m. and midnight, smelling of alcohol, and told her he should beat her up for allowing another man inside "our home" earlier that day.[2] Golston hit her "many, many, many times" in the face with his fists. She managed to get outside to her car, but he pulled her out of the car before she could start it. As she lay on the ground, Golston straddled her and continued beating her in the face. As he hit her, Golston said that she disrespected him by letting another man into the house and that he should kill her. She thought she was going to die. Golston then raised a hatchet over the victim, brought it down slowly, and rubbed the blade on her skin. While he rubbed the blade on her, he again said he should kill her. She begged him not to strike her with the hatchet. He raised the hatchet over his head, but then dropped it and walked away. The victim could not stand up and asked Golston for help. He started to pick her up, but then shoved her back to the ground and left.

Golston testified to a different version of events. According to his testimony, when he arrived at the house, the victim met him outside and was furious. She said "I'm going" and began walking off. As she walked away, Golston followed her and

2. The other man was a longtime friend of the victim. He and his wife had helped the victim move furniture that day.

said, "Where you going? You ain't going nowhere." Without provocation, the victim then turned around, jumped on him, and clawed his face with her fingernails, cutting his face. He testified, "I slapped her, both sides of the face" and "she fell." He then went into the house, washed his face, and retrieved his hatchet. When he went back outside, she asked him for help getting up. He placed the hatchet on her car, helped her walk back to the house, and left.

Golston requested a jury charge on CDV as a lesser-included offense of CDVHAN.[3] He also requested a charge on self-defense. The trial court found that depending on whether the jury believed the State or Golston, he either was guilty of CDVHAN or acted in self-defense and thus was not guilty. The trial court therefore charged the jury on self-defense but not on CDV. The jury found Golston guilty, and the trial court sentenced him to ten years in prison.

## II. CDV as a Lesser–Included Offense of CDVHAN

A person is guilty of CDV when the State proves he either "cause[d] physical harm or injury to [his] own household member," or "offer[ed] or attempt[ed] to cause physical harm or injury to [his] own household member with apparent present ability under circumstances reasonably creating fear of imminent peril." S.C.Code Ann. § 16–25–20(A), (B) (Supp. 2011). A person is guilty of CDVHAN when, in addition to proving CDV, the State proves one of the aggravating circumstances set forth in subsection 16–25–65(A) of the Code, such as that the defendant's conduct "result[ed] in serious bodily injury to the victim." § 16–25–65(A)(1) (Supp.2011).

In most prosecutions for CDVHAN, there will be evidence the defendant committed acts which constitute only CDV in addition to acts which constitute CDVHAN. In this case, for example, Golston's statement to the victim "you ain't going nowhere" and his admitted "slap[ping] her face" could be found by a jury to amount only to CDV and not CDVHAN. However, the mere existence of evidence that Golston committed these acts in addition to other acts which could constitute CDVHAN, such as beating the victim with his fists so severely that her own son could not recognize her and she could not

---

**3.** Golston also requested a charge on simple assault and battery, but does not challenge on appeal the trial court's decision not to charge it.

open one of her eyes for ten days, does not warrant a jury charge on simple CDV. Rather, to warrant a jury charge on the lesser offense, the evidence viewed as a whole must be such that the jury could conclude the defendant is guilty of the lesser offense *instead of* the indicted offense. *State v. Drayton*, 293 S.C. 417, 428, 361 S.E.2d 329, 335 (1987) ("A trial judge is required to charge the jury on a lesser included offense if there is evidence from which it could be inferred the lesser, rather than the greater, offense was committed."). In other words, the existence of evidence that Golston committed simple CDV in addition to CDVHAN does not warrant the charge. There must be evidence from which the jury could conclude the defendant committed only the lesser offense. *See State v. Brown*, 269 S.C. 491, 495–96, 238 S.E.2d 174, 176 (1977) ("The trial judge committed no error in refusing to charge simple assault and battery since there was no evidence tending to show appellant was only guilty of the lesser offense.").

▇▇▇▇ Therefore, the task of the trial court in deciding whether to charge the lesser offense, and of this court reviewing that decision on appeal, is to examine the record to determine if there is evidence upon which the jury could find the defendant was guilty of the lesser offense, but not guilty of the greater offense.[4] In this case, the jury could have found Golston not guilty of any offense if it determined the State failed to prove he was the person who assaulted the victim, or failed to disprove at least one element of self-defense.[5] It is also possible the jury could have determined Golston committed some act which constituted CDV. However, there is no evidence in the record that anyone else caused injury to the victim. Therefore, if the State proved Golston committed CDV, then he was necessarily the person whose attack caused

---

4. In making this inquiry, we are mindful that Golston had no burden of proof. However, we are not permitted to speculate that the jury might not have believed some of the evidence that was presented. *See State v. Franks*, 376 S.C. 621, 624, 658 S.E.2d 104, 106 (Ct.App.2008) ("The mere contention that the jury might accept the State's evidence in part and reject it in part is insufficient to satisfy the requirement that some evidence tend to show the defendant was guilty of only the lesser offense.").

5. As to the State's burden to disprove self-defense, see *State v. Bixby*, 388 S.C. 528, 553–54, 698 S.E.2d 572, 585–86 (2010) (stating self-

all of the victim's injuries. There is no evidence in the record upon which the jury could have found that those injuries were not "serious bodily injur[ies]" under subsection 16–25–65(A)(1). Under these circumstances, it was not possible for the jury to find Golston guilty of CDV but not guilty of CDVHAN.

■ Golston makes several arguments in support of his position that the charge should have been given. First, he argues simply that whether the victim's injuries were "serious" under subsection 16–25–65(A)(1) is a question of fact, and if the jury found the injuries were not serious, he could be guilty only of CDV. In support of this argument, Golston points out the phrase "serious bodily injury" is not defined in the statute,[6] indicating the Legislature's intent that the question be decided by a jury. We agree there will be many instances in which the question is one for the jury. However, just as in situations where minor injuries cannot possibly be found by a jury to be serious, and therefore the defendant cannot be guilty of CDVHAN, we find the victim's injuries in this case cannot possibly be found not to be serious. The only evidence in the record is that the blows to the victim's face caused swelling so severe that her son could not recognize her, she had difficulty breathing and feeding herself for several days, and she could not open one of her eyes for ten days. The doctors were so concerned by the severity of the injuries to her face that they ordered a CAT scan and testing for internal trauma. The beating caused such severe swelling that doctors were initially unable to examine her eyes, but when they could, they found permanent injury in that she had

---

defense consists of four elements, and when a defendant raises that defense, the State bears the burden of disproving at least one of the elements beyond a reasonable doubt).

6. "Serious bodily injury" is defined in another section of the Code as "a physical condition which creates a substantial risk of death, serious personal disfigurement, or protracted loss or impairment of the function of a bodily member or organ." S.C.Code Ann. § 23–31–400(A)(2) (2007). We do not decide whether that definition applies to subsection 16–25–65(A)(1). However, even if we decided it did, we do not believe there is any evidence in the record that the victim's injuries do not meet that definition, as she suffered temporary serious disfigurement to her face, protracted loss of the use of her eyes from the swelling, and permanent impairment of vision.

to wear glasses for the first time. We disagree with Golston that a jury could possibly find these injuries were not serious.

Golston also argues the jury could have found the State failed to prove two other aggravating circumstances: "an assault and battery which involves the use of a deadly weapon" under subsection 16–25–65(A)(1), and "an assault ... which would reasonably cause a person to fear imminent serious bodily injury or death" under subsection 16–25–65(A)(2). Additionally, as to the serious bodily injury aggravating circumstance, Golston argues the victim did not suffer any broken bones, she did not permanently lose her eyesight, and there was no evidence she sustained cuts or required stitches. We find it unnecessary to address these arguments because, as we have explained, the only evidence in the record is that the injuries the victim did sustain were serious, and thus the State necessarily proved at least one aggravating circumstance—serious bodily injury. The fact that there may be conflicting evidence as to other aggravating circumstances, or that there may be other serious bodily injuries the victim did not sustain, does not affect the existence of some serious bodily injury, and therefore the necessity that, on these facts, Golston was either not guilty or guilty of CDVHAN.

Because there is no evidence to support a conclusion that the victim did not suffer "serious bodily injury," it was not possible for the jury to find Golston guilty of CDV instead of CDVHAN. The trial court properly refused to charge CDV.

## III. Other Issues

Golston also argues the trial court erred in rejecting his challenge to the sufficiency of his indictment and in denying his motion to suppress evidence of the hatchet deputies found in his house while executing a warrant for his arrest. We disagree and affirm pursuant to Rule 220(b)(1), SCACR, and the following authorities:

As to the challenge to the sufficiency of the indictment: *Evans v. State*, 363 S.C. 495, 508, 611 S.E.2d 510, 517 (2005) (stating the primary purposes of an indictment are to apprise the defendant "of the elements of the offense and to allow him to decide whether to plead guilty or stand trial, and to enable the circuit court to know what judgment to pronounce if the defendant is convicted").

As to the motion to suppress: *State v. Loftin,* 276 S.C. 48, 51, 275 S.E.2d 575, 576 (1981) ("A valid arrest warrant implicitly grants police the limited authority to enter a suspect's residence 'when there is reason to believe the suspect is within.'" (quoting *Payton v. New York,* 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980))); *United States v. Green,* 599 F.3d 360, 375–76 (4th Cir.2010) ("Where law enforcement officers possess an arrest warrant and probable cause to believe a suspect is in his home, the officers may enter and search anywhere in that residence in which the suspect might be found.") (citing *Maryland v. Buie,* 494 U.S. 325, 332–33, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990)); *State v. Morris,* 395 S.C. 600, 605, 720 S.E.2d 468, 471 (Ct.App.2011) (stating on appeal of the denial of a motion to suppress, this court reviews a trial court's legal conclusions for clear error and factual findings under the any-evidence standard).

## IV. Conclusion

We find there is no evidence in the record upon which the jury could have found Golston committed CDV instead of CDVHAN, and therefore the trial court properly refused to charge CDV as a lesser-included offense. We affirm.

**AFFIRMED.**

HUFF and SHORT, JJ., concur.