**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Demetrik Maurice Ceaser, Appellant.

Appellate Case No. 2016-000176

———

Appeal From Florence County
G. Thomas Cooper, Jr., Circuit Court Judge

———

Unpublished Opinion No. 2018-UP-326
Submitted April 2, 2018 – Filed July 18, 2018

———

**REVERSED AND REMANDED**

———

Appellant Defender Lara Mary Caudy, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Senior Assistant Deputy Attorney General Deborah R.J. Shupe, both of Columbia; and Solicitor Edgar Lewis Clements, III, of Florence, all for Respondent.

———

**PER CURIAM:** Demetrik Maurice Ceaser appeals his conviction for criminal domestic violence of a high and aggravated nature (CDVHAN), arguing the trial

court erred by refusing to instruct the jury on the lesser included offense of criminal domestic violence (CDV).  We reverse.

## I.

Kerile Thomas and her mother, Carol Gerald, drove to Ceaser's house in Florence to drop off Ceaser and Kerile's one-year-old daughter ("Minor") so she could visit with her father.  Once they arrived, Ceaser gave Kerile his debit card to go purchase a meal for Minor.  Kerile and Carol drove to KFC, leaving Minor with Ceaser.

When Kerile and Carol returned, Ceaser went outside to meet them while holding Minor, and an argument erupted because Kerile suspected Ceaser had another woman inside his home.  During the argument, Ceaser asked Kerile for the KFC receipt; he then reached into her car to grab the receipt from the floorboard of the front passenger seat.  Accounts of what happened next vary.

According to Ceaser's testimony, after he grabbed the receipt, Kerile "starting hitting him with her hip" and punched him in the chest.  Ceaser says he then "squeezed" a drink that was sitting on top of the car and "what was left in the cup [he] threw on [Kerile]."  Kerile then struck Ceaser; he hit her once in return.  Ceaser testified Carol got out of the car and "ran straight at [him]."  Carol threw her shoe at him, grabbed his shirt, and began hitting him.  During all of the commotion, Ceaser was holding Minor.  Ceaser maintained he struck both Kerile and Carol to protect himself and the child.

Kerile testified she did not remember much of what occurred after Ceaser retrieved the receipt.  She recalled trying to "knock the cup out of [her] face" and "a lot of fruit punch in [her] hair," but the next thing [she] remember[ed] is . . . it was dark."  Kerile stated she blacked out and Ceaser had "knocked her unconscious."  After the altercation, Kerile drove herself and her mother to a Walmart and then to a bowling alley parking lot.  Kerile testified she did not remember Ceaser striking her, nor did she witness the quarrel between Ceaser and Carol.  Kerile asserted she did not hit or strike Ceaser.

According to Carol, after Ceaser picked up the receipt from the floorboard, he threw the drink in Kerile's face and punched her.  Carol admitted she got out of the car and attacked Ceaser, throwing her shoe at him and grabbing his shirt, refusing to let go until it ripped.  After departing the scene with Kerile, Carol called her brother to tell him about the incident.  She later called 911, but Ceaser had already made the 911 call for law enforcement to respond.

Kerile and Carol eventually returned to Ceaser's house, where law enforcement had arrived. Kerile was treated at McLeod Regional Medical Center for a small cut on her cheek that was treated with one suture, and a fractured cheekbone that did not require sutures. Kerile was prescribed pain medication and remained at the hospital less than three hours before discharge.

The Florence County Grand Jury indicted Ceaser for CDVHAN as to Kerile, second degree assault and battery on Carol, and unlawful conduct towards a child. The case was tried on January 19, 2016. The trial court directed a verdict of acquittal on the unlawful conduct charge. Ceaser requested a jury instruction on the lesser included offense of CDV, contending it was for the jury to determine whether Kerile's injuries constituted "serious bodily injury." Citing *State v. Golston*,[1] the court refused to charge the lesser included offense of CDV.

The jury acquitted Ceaser of second degree assault and battery and the lesser included offense of third degree assault and battery related to Carol, but found him guilty of CDVHAN as to Kerile. He was sentenced to three years' imprisonment.

**II.**

Ceaser argues the trial court erred by refusing to instruct the jury on the lesser included offense of CDV, claiming there was evidence upon which the jury could have found he committed only CDV instead of the indicted offense of CDVHAN. We agree.

"We must reverse and remand for a new trial if the evidence in the record is such that the jury could have found the defendant guilty of the lesser offense instead of the crime charged." *State v. Gilmore*, 396 S.C. 72, 77, 719 S.E.2d 688, 690 (Ct. App. 2011). The "task of the trial court in deciding whether to charge the lesser offense . . . is to examine the record to determine if there is evidence upon which the jury could find the defendant was guilty of the lesser offense, but not guilty of the greater offense." *Golston*, 399 S.C. at 398, 732 S.E.2d at 178. "[A] trial court commits reversible error if it fails to give a requested charge on an issue raised by the evidence." *State v. Hill*, 315 S.C. 260, 262, 433 S.E.2d 848, 849 (1993).

To prove CDV, the State was required to show the defendant either "cause[d] physical harm or injury to [his] own household member," or "offer[ed] or

---

[1] 399 S.C. 393, 732 S.E.2d 175 (Ct. App. 2012).

attempt[ed] to cause physical harm or injury to [his] own household member with apparent present ability under circumstances reasonably creating fear of imminent peril." S.C. Code Ann. § 16-25-35(A) (2012). A person is guilty of CDVHAN when, in addition to proving CDV, the State proves one of the aggravating circumstances set forth in subsection § 16-25-65 (A)(1) (2012). *Golston*, 399 S.C. at 397, 732 S.E.2d at 178. At the time relevant to Ceaser's trial, those aggravating circumstances included: (1) "an assault and battery which involves the use of a deadly weapon or results in serious bodily injury to the victim" and (2) "an assault, with or without an accompanying battery, which would reasonably cause a person to fear imminent serious bodily injury or death." S.C. Code Ann. § 16-25-65(A) (2012).[2]

We believe a rational jury could have found Ceaser was guilty only of CDV instead of CDVHAN. The CDVHAN statute applicable to Ceaser's charges did not define "serious bodily injury." Nor was the trial court requested to instruct the jury as to a definition. It appears the trial court believed that, as in *Golston*, Kerile's injuries were so severe that no rational jury could conclude they did not constitute "serious bodily injury."

There was evidence that, if believed by the jury, showed Kerile's injuries may not have constituted serious bodily injury. For instance, Kerile testified this was not the

---

[2] The CDVHAN statute was amended in 2015. It no longer contains the phrase "serious bodily injury," and instead reads in part:

> (A) A person who violates Section 16-25-20(A) is guilty of the offense of domestic violence of a high and aggravated nature when one of the following occurs. The person:
>> (1) commits the offense under circumstances manifesting extreme indifference to the value of human life and great bodily injury to the victim results;
>> (2) commits the offense, with or without an accompanying battery and under circumstances manifesting extreme indifference to the value of human life, and would reasonably cause a person to fear imminent great bodily injury or death.

S.C. Code Ann. § 16-25-65(A)(1)–(2) (2015).

first time she "blacked out," making it unclear whether she had been knocked unconscious by Ceaser or had lost consciousness due to a separate condition. Her emergency room visit was relatively brief, and the treatment prescribed to her upon discharge was simple pain medication. Kerile testified she suffered from continuing headaches and may require future surgery, although no medical evidence was offered on these points. Kerile's injuries did not rise to the level seen in *Golston*, where the victim was beaten beyond recognition, had prolonged difficulty breathing, could not open her eyes for 10 days, and doctors found permanent injury.

Of course, we recognize Kerile's injuries were substantial. A rational jury could have concluded they amounted to serious bodily injury, even if the jury had been presented the option of convicting on the lesser offense. But Ceaser was entitled to have the jury consider both options based on the evidence. It appears the jury had some reservations about whether the State had proven CDVHAN, as it sent the court a note during deliberations asking for the definition of CDVHAN again. This request for clarification may have been triggered by the instruction they had been given on the assault and battery in the second degree charge regarding Carol, which had defined "moderate bodily injury" as follows:

> Moderate bodily injury means physical injury that involves prolonged loss of consciousness or that caused temporary or . . . moderate disfigurement or temporary loss of the function of a bodily member or organ or injury that requires medical treatment when the treatment requires regional or general anesthesia or injury that results in a fracture or dislocation. Moderate bodily injury does not include a one-time treatment and subsequent observation of cuts and scratches and abrasions or bruises that would not ordinarily require extensive medical care.

Complicating things, Dr. Bingham testified Kerile's medical records revealed she "had a three millimeter laceration requiring one suture" and a fracture to her cheekbone. Given this medical evidence and the charge on moderate bodily injury, a rational jury may have been confused as to whether Kerile's injuries fit the undefined element of "serious bodily injury." We find the evidence entitled Ceaser to a charge on the lesser included offense that did not require proof of this element.

Thus, because "[a] trial judge must charge a lesser included offense if there is any evidence from which the jury could infer the defendant committed the lesser rather

than the greater offense," we reverse Ceaser's conviction and remand for a new trial. *State v. White*, 361 S.C. 407, 412, 605 S.E.2d 540, 542 (2004).

**REVERSED AND REMANDED.**[3]

**SHORT, THOMAS, and HILL, JJ., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.