**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4197**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ALVIN ANDRAE DRUMMOND,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Greenville.  Henry M. Herlong, Jr., Senior District Judge.  (6:17-cr-00517-HMH-1)

Argued:  January 31, 2019                                      Decided:  June 5, 2019

Before AGEE and FLOYD, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by published opinion.  Senior Judge Traxler wrote the opinion, in which Judge Agee joined.  Judge Floyd wrote an opinion concurring in part and dissenting in part.

**ARGUED:**  Joshua Snow Kendrick, KENDRICK & LEONARD, P.C., Greenville, South Carolina, for Appellant.  Jamie L. Schoen, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.  **ON BRIEF:**  Sherri A. Lydon, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

TRAXLER, Senior Circuit Judge:

Alvin Drummond was convicted of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and he received a sentence enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1). He appeals the district court's denial of his pretrial motion to suppress evidence against him, as well as the imposition of the enhanced sentence under the ACCA. For the reasons that follow, we affirm.

I.

In May 2017, Deputy K. McGrath received a tip from a known informant that Nicholas Finley was selling methamphetamine from Room 131 of the Red Roof Inn in Greenville, South Carolina. Deputy McGrath was aware of Finley's reputation as a person involved with narcotics and firearms, and she knew that he was a convicted felon. On May 11, 2017, at approximately 4:30 p.m., she and another deputy drove to the Red Roof Inn to investigate the tip and see if there was any suspicious activity occurring there. Room 131 was located on the back side of the motel. The only car in the parking lot was in front of Room 131, and it had a fake paper tag. As Deputy McGrath was checking the VIN of the vehicle to see if it was stolen, Finley came to the door of Room 131, with a big gray pit bull at his side. Deputy McGrath recognized Finley and asked permission to enter the room. Finley agreed and put the dog in the bathroom.

There were seven people inside Room 131, including Drummond, all of whom voluntarily produced identification. Deputy McGrath asked Finley if anyone else was present in the room, and Finley assured her that there was not. After checking the

2

identifications provided by the occupants of the room, Deputy McGrath asked for Finley's permission to check the bathroom. He again consented. Aware that the dog was inside the bathroom, Deputy McGrath slowly opened the door. There she found a woman, who could not be identified at the time by the name given. There was an orange hypodermic needle cap near the woman's feet. Deputy McGrath asked the occupants of the room if anyone had a medical condition that would explain the presence of the needle cap. No one admitted to any such condition.

While her partner stayed with the occupants in the room, Deputy McGrath sought a warrant to search Room 131, based on the following affidavit:

> The Affiant obtained knowledge that the occupant of this room, Nicholas Finley was selling Methamphetamine from room 131 at this motel. When I performed an extra patrol of this motel, I observed a suspicious vehicle parked in front of the motel room with a fake paper tag. As I walked up to the vehicle, Nicholas Finley began exiting the motel room. I observed multiple people inside the hotel room along with a large pit bull. As Nicholas put the dog in the bathroom, I asked if I could enter the hotel room and Nicholas stated I could. Due to the large amount of people in the room I asked to see identification and asked if anyone else was in the room. I was advised there was no one else. After checking everyone's identifications, I asked Nicholas if I could check the bathroom to ensure no one else was in the room. I found a female that could not be identified at this time by her name given and I observed an orange hypodermic needle cap on the floor next to her feet. No one in the room was a diabetic and could provide a reason for having this drug paraphernalia. I believe through the execution of this search warrant, more narcotics and paraphernalia will be located.

J.A. 71. The magistrate issued the search warrant, which resulted in the discovery of firearms, ammunition, multiple baggies with methamphetamine residue, and various items of drug paraphernalia, including hypodermic needles.

3

In a backpack located near Drummond's feet, the officers found a Smith & Wesson .38 caliber revolver, fully loaded with .38 caliber rounds, a Crown Royal bag containing additional .38 caliber ammunition, and job-related paperwork in Drummond's name. Drummond's fingerprints were subsequently found on the gun.

Drummond was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Prior to trial, he moved to suppress the evidence seized in the search, asserting that the search warrant was not supported by probable cause. The government argued that Drummond lacked standing to challenge the search of the motel room and that, even if he did have standing, the search warrant was supported by probable cause. The district court denied the motion to suppress. Drummond was subsequently convicted by a jury of the felon-in-possession charge.

Over Drummond's objections, the district court imposed an enhancement under the ACCA, based upon Drummond's three prior felony convictions in South Carolina for criminal domestic violence. Drummond received a sentence of 247 months' imprisonment. He appeals the district court's denial of his motion to suppress and the imposition of the ACCA sentence enhancement.

II.

We begin with Drummond's appeal of his § 922(g)(1) conviction, which was based solely on his claim that the district court erred in denying his motion to suppress. More specifically, Drummond contends that the affidavit prepared by Deputy McGrath was insufficient to establish probable cause for the magistrate to issue the search warrant. We disagree.

The Fourth Amendment protects individuals from "unreasonable searches and seizures," and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Generally, evidence seized in violation of the Fourth Amendment is not admissible at trial. *See United States v. Andrews*, 577 F.3d 231, 235 (4th Cir. 2009).

"When considering a district court's denial of a suppression motion, we review factual findings for clear error and legal conclusions *de novo*." *United States v. Richardson,* 607 F.3d 357, 369 (4th Cir. 2010). "Although the concept of probable cause defies a precise definition, it exists where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found in the place to be searched." *Id.* (internal quotation marks and alteration omitted). "[T]he determination of probable cause by the issuing magistrate is entitled to great deference from this court." *Id.* (internal quotation marks omitted). The magistrate "issuing a search warrant must simply make a practical, commonsense determination—based on the totality of the circumstances revealed in the affidavit—of whether there is a substantial likelihood that evidence of a crime will be found in a particular place." *United States v. Allen*, 631 F.3d 164, 173 (4th Cir. 2011) (citing *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983)). "Our duty 'is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.'" *Richardson,* 607 F.3d at 369 (quoting *Gates,* 462 U.S. at 238-39).

5

Drummond argues that Deputy McGrath's affidavit did not suffice to establish probable cause to search the motel room because the affidavit contained no information about the informant or the informant's credibility, and because nothing in the affidavit beyond Finley's presence in the motel room corroborated the informant's tip. Drummond argues that the false paper tag on the car that was parked outside the motel room could not be relied upon to justify a search of the motel room. And Drummond argues that the hypodermic needle cap was nothing more than a piece of trash. However, "[t]he totality-of-the-circumstances test 'precludes this sort of divide-and-conquer analysis.'" *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018) (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). "The totality of the circumstances requires courts to consider the whole picture," and "the whole is often greater than the sum of its parts—especially when the parts are viewed in isolation." *Id.* (internal quotation marks omitted). Nor does the probable cause analysis require a magistrate to rule out every "innocent explanation for suspicious facts." *Id.*

Here, Deputy McGrath did not identify her informant or explain the basis for the informant's tip that drug dealing was occurring in Room 131 of the Red Roof Inn. She testified that this was because of the danger that the subject posed and the unwillingness of the tipster to be known. Contrary to Drummond's view, however, the affidavit for the warrant was not based solely on the informant's tip. The tip, coupled with Deputy McGrath's knowledge of Finley's drug-dealing reputation, led her to conduct the extra patrol of the motel in order to investigate the tip. This investigation, in turn, led to facts and circumstances that demonstrated probable cause to obtain the warrant.

6

First, the tip provided to Deputy McGrath was partially corroborated immediately upon the officers' arrival at the motel room. Finley walked out of the specific room identified by the informant as the place where drugs were being dealt. The only car in the lot was parked directly in front of the room and had a fake paper tag. There were a large number of people in the small motel room in the afternoon hours. When Deputy McGrath asked for permission to enter the room, Finley consented, but put his pit bull in the bathroom. Finley then lied to the deputies about whether there was a person in the bathroom. After Finley consented to Deputy McGrath's request to check the bathroom, a woman was found sitting on the floor of the bathroom who could not be identified by the name given, and who had drug paraphernalia at her feet.

We hold that these circumstances, viewed in their totality, were sufficient to justify the magistrate's determination that there was a fair probability that evidence of methamphetamine distribution and additional drug paraphernalia would be found in the motel room. Accordingly, we affirm the district court's denial of Drummond's motion to suppress the evidence against him, and we affirm his conviction.[1]

III.

---

[1] On appeal, the government argues that Drummond failed to establish standing to challenge the search because he was a social guest in the room. The government also asserts, as a new ground to affirm, that Drummond abandoned ownership of the backpack during the search. Because probable cause existed to issue the search warrant, we need not address these arguments. *See Byrd v. United States*, 138 S. Ct. 1518, 1530 (2018) ("Because Fourth Amendment standing is subsumed under substantive Fourth Amendment doctrine, it is not a jurisdictional question and hence need not be addressed before addressing other aspects of the merits of a Fourth Amendment claim.").

Drummond next challenges the district court's enhancement of his sentence under the ACCA, which was based upon three predicate convictions for criminal domestic violence in South Carolina. One was for Drummond's third offense for criminal domestic violence ("CDV"). *See* S.C. Code Ann. §§ 16-25-20(A), (B)(3). The other two were for his convictions for criminal domestic violence of a high and aggravated nature ("CDVHAN"). *See* S.C. Code Ann. § 16-25-65. The question of whether these prior felony convictions constitute predicate felonies for purposes of the ACCA is a legal issue that we review de novo. *See United States v. Doctor,* 842 F.3d 306, 308 (4th Cir. 2016).

A.

Ordinarily, a defendant convicted of violating 18 U.S.C. § 922(g) is subject to a term of imprisonment of not more than 10 years. *See* 18 U.S.C. § 924(a)(2). However, if the defendant has three or more predicate convictions for a "violent felony or a serious drug offense," the ACCA increases the applicable prison term to a mandatory minimum term of imprisonment of 15 years. 18 U.S.C. § 924(e)(1). The ACCA defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that:

> (i) has as an element the use, attempted use, or threatened use of *physical force* against the person of another; or

> (ii) is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B) (emphasis added). "[T]he phrase 'physical force,'" in subsection (e)(2)(B), "means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010).

The issue here is whether Drummond's felony CDV convictions qualify as violent felonies under § 924(e)(2)(B)(i), which is commonly referred to as the "force clause" of the ACCA. South Carolina CDV is defined by statute. *See* S.C. Code Ann. § 16-25-20. At the time of Drummond's convictions, the statute made it unlawful for a person to (1) "*cause physical harm or injury* to a person's own household member" or to (2) "*offer or attempt to cause physical harm or injury* to a person's own household member with apparent present ability under circumstances reasonably creating fear of imminent peril." S.C. Code Ann. § 16-25-20(A)(1), (2) (emphasis added). Third offense CDV is a felony offense, carrying a mandatory minimum sentence of one year imprisonment. *See* S.C. Code Ann. § 16-25-20(B)(3). CDVHAN is also a felony offense; it requires proof of the elements necessary to establish the violation of CDV, plus one of the aggravating circumstances set forth in S.C. Code Ann. § 16-25-65(A). *See State v. Golston*, 732 S.E.2d 175, 178 (S.C. Ct. App. 2012). Thus, if a CDV conviction as defined in S.C. Code Ann. § 16-25-20(A) satisfies the requirements for a "violent felony" for purposes of the force clause of the ACCA, then the felony offenses of third offense CDV and CDVHAN necessarily do as well.[2]

When assessing whether a prior conviction qualifies as an ACCA predicate offense, courts first consider whether the "categorical" approach or the "modified categorical" approach applies to the statute. *See United States v. Hemingway,* 734 F.3d

---

[2]      S.C. Code Ann. §§ 16-25-20 and 16-25-65 were amended effective June 4, 2015, to change the classifications of the various levels of the crimes. The basic definition of the CDV offense under § 16-25-20(A) was not changed.

323, 327 (4th Cir. 2013). Here, the parties agree that the CDV statute is not divisible and, therefore, that the categorical approach applies. We agree as well. Rather than effectively creating several different crimes, the statute addresses a single crime of CDV, which can be committed by any one of three means—an offer, attempt, or actual causation of physical harm or injury. *See* S.C. Code Ann. § 16-25-20(A).[3]

Under the categorical approach, we "examine only the elements of the state offense and the fact of conviction, not the defendant's conduct." *Doctor,* 842 F.3d at 308. In addition, "we focus on the minimum conduct required to sustain a conviction for the state crime, although there must be a realistic probability, not a theoretical possibility, that a state would actually punish that conduct." *Id.* (internal citations and quotation marks omitted); *see also United States v. Middleton*, 883 F.3d 485, 488 (4th Cir. 2018) (explaining that the categorical approach "requires courts to review the most innocent conduct that the law criminalizes, rather than the specific facts on which the defendant was convicted" (internal quotation marks omitted)). When "evaluating a state court conviction for ACCA predicate offense purposes, a federal court is bound by the state

---

[3] The "modified categorical" approach is applicable when a defendant has been "convicted of violating a divisible statute, and then, only to determine which statutory phrase was the basis for the conviction." *United States v. Hemingway,* 734 F.3d 323, 327 (4th Cir. 2013) (internal quotation marks omitted). A statute is "divisible only when [it] lists multiple, alternative elements, and so effectively creates several different crimes." *Id.* at 331 (internal quotation marks and alteration omitted). "In other words, we stray from use of the categorical approach only in cases involving statutes that set out elements in the alternative and thus create multiple versions of the crime." *United States v. Montes-Flores*, 736 F.3d 357, 365 (4th Cir. 2013) (internal quotation marks omitted). Because the South Carolina CDV statute is not divisible, the modified categorical approach does not apply.

court's interpretation of state law, including its determination of the elements of the potential predicate offense." *Hemingway*, 734 F.3d at 333 (internal quotation marks and alteration omitted). For common law offenses, "[w]e look to state court decisions to determine the minimum conduct needed to commit an offense, and to identify the elements" of the offense. *Doctor,* 842 F.3d at 309 (internal citation omitted). For statutory offenses, we look to the "physical actions specified in the . . . statute," and any state court decisions interpreting its terms. *United States v. Jones*, 914 F.3d 893, 902 (4th Cir. 2019). "We then compare th[e] elements [of the offense] to the definition of violent felony in the force clause" of the ACCA. *Doctor*, 842 F.3d at 309.

Prior to Drummond's sentencing in this case, this court had held, in several unpublished decisions, that South Carolina CDV categorically qualifies as a "violent felony" under the ACCA. *See, e.g., United States v. Lewis*, 719 F. Appx. 210, 219-221 (4th Cir. 2018) (holding that CDVHAN is categorically a violent felony for purposes of the ACCA); *United States v. Chisolm*, 579 F. Appx. 187, 188 (4th Cir. 2014) (holding that CDV is categorically a crime of violence under USSG § 4B1.2(a)); *see also United States v. Holland*, 737 F. Appx. 151, 152 (4th Cir. 2018) (holding that the district court did not plainly err in determining that CDV qualifies as a "crime of violence" under USSG § 4B1.2(a)); *Sanchez-Salazar v. Sessions*, 717 F. Appx. 356, 357 (4th Cir. 2018) (concluding that petitioner's CDV conviction constituted a crime of violence under 8 U.S.C. § 16(a), thus rendering him ineligible for cancellation of removal); *United States*

11

*v. Young*, 702 F. Appx. 113, 115 (4th Cir. 2017) (holding that conviction for first-degree CDV categorically qualified as a crime of violence).[4]

Drummond argues that these cases were wrongly decided because, notwithstanding the language of the CDV statute, South Carolina does not require, as an element of CDV, the use, attempted use, or threatened use of physical force capable of causing physical harm or injury. Although Drummond is correct that we are not bound by our prior unpublished decisions, we find their reasoning to be persuasive, and we decline his invitation to read into the CDV statute language that is simply not there.

B.

We begin by defining the minimum or "most innocent" conduct that must be proven to obtain a statutory CDV conviction in South Carolina. *Middleton*, 883 F.3d at 488. We need look no further than the language of the statute, and the requisite physical actions specified therein. *See Jones*, 914 F.3d at 902. At a minimum, the defendant must have "offer[ed] . . . to cause physical harm or injury to [his or her] own household member with apparent present ability under circumstances reasonably creating fear of imminent peril." S.C. Code Ann. § 16-25-20(A)(2). We have no trouble concluding that this minimum unlawful conduct satisfies the ACCA's requirement that the offense have, as an element, the threatened use of physical or violent force "capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140.

---

[4] The term "crime of violence" under the Guidelines and "violent felony" under the ACCA "have been defined in a manner that is substantively identical." *United States v. King*, 673 F.3d 274, 279 n.3 (4th Cir. 2012) (internal quotation marks omitted). Accordingly, we often rely on precedents addressing the two terms interchangeably. *Id.*

First, the CDV statute's requirement that there be an "offer" to cause physical harm or injury parallels the ACCA's requirement that there be a "threat" to inflict such harm or injury. An "offer" to commit physical harm is, at a minimum, a threat to do so. *See Threat*, Black's Law Dictionary (10th ed. 2014) (defining a "threat" as "a declaration, express or implied, of an intent to inflict loss or pain on another"); *Offer,* Merriam Webster's Collegiate Dictionary (10th ed. 1998) (defining an "offer" as including a "threat"); *see also United States v. Mitchell*, 743 F.3d 1054, 1059 (6th Cir. 2014) (holding that "the commission of a robbery through fear, which in Tennessee reduces to the fear of bodily injury from physical force *offered* or impending, directly corresponds to § 924(e)(2)(B)(i)'s 'use . . . or threatened use of physical force'") (emphasis added)). South Carolina law addressing the question of what constitutes an "offer" also likens it to a "threat" to engage in a prohibited act. *See e.g., Mellen v. Lane*, 659 S.E.2d 236, 244 (S.C. Ct. App. 2008) (defining common law assault as "an attempt or offer, with force or violence, to inflict bodily harm on another or engage in some offensive conduct").

Second, the CDV statute requires that the threat be one "*to cause physical harm or injury*" to the intended victim "with apparent present ability under circumstances reasonably creating fear of imminent peril." S.C. Code Ann. § 16-25-20(A)(2) (emphasis added). In other words, there must be a threat to inflict physical harm or injury *and* circumstances sufficient to cause the victim to reasonably fear that the physical harm or injury will be done. This element closely parallels and more than satisfies the ACCA's requirement that there be a threatened use of physical force that is "capable *of causing physical pain or injury*" to the victim. *Johnson*, 559 U.S. at 140.

13

C.

The crux of Drummond's argument is that, notwithstanding the plain language of the CDV statute, a CDV conviction cannot categorically be deemed a violent felony because we have held that South Carolina's common law offense of assault and battery of a high and aggravated nature ("ABHAN") is not categorically a violent felony. *See Hemingway,* 734 F.3d at 335; *see also United States v. Montes-Flores,* 736 F.3d 357, 369 (4th Cir. 2013). Drummond argues that the minimum CDV offense is nothing more than a common-law assault offense inflicted upon a household member and, therefore, that we must reach the same conclusion here. The flaw in Drummond's argument, however, is that, unlike ABHAN, the statutory crime of CDV does not reference nor rely upon South Carolina's definition of assault.

In South Carolina, common-law assault has historically "been defined as an 'attempted battery' or an unlawful attempt or offer to commit a *violent injury* upon another person, coupled with the present ability to complete the attempt or offer by a battery." *State v. Sutton*, 532 S.E.2d 283, 285 (S.C. 2000) (emphasis added). However, the state courts have recognized that "the adjective 'violent' may be somewhat misleading," because a "*violent injury*" for purposes of an assault conviction requires no violence as commonly understood or a threat of physical harm or injury at all. *State v. LaCoste,* 553 S.E.2d 464, 471 (S.C. Ct. App. 2001); *State v. Germany*, 44 S.E.2d 840, 841 (S.C. 1947) (While "[a] simple assault and battery may be said to be violent," the term "[v]iolence does not necessarily import serious injury."). Rather, an assault encompasses "'any touching of the person of an individual in a rude or angry manner,

14

without justification.'" *LaCoste,* 553 S.E.2d at 471 (quoting *State v. Mims*, 335 S.E.2d 237, 237 (S.C. 1985)); *see also State v. Jackson*, 10 S.E. 769, 771 (S.C. 1890) (defining an "assault" as "an offer or attempt to do violence to the person of another, in a rude, angry, or resentful manner") (internal quotation marks omitted)). Thus, as we have recognized, in South Carolina, "a person can perpetrate an assault by [merely] attempting to touch another in a rude or angry manner." *Jones*, 914 F.3d at 903. For example, "spitting at another's face – which can be accomplished in a rude or angry manner but without violent physical force – constitutes an assault." *Id.* (citing *State v. Sanders*, 75 S.E. 702, 703 (S.C. 1912).

For this reason, we previously held that South Carolina's common-law ABHAN, and its lesser included offense of assault of a high and aggravated nature ("AHAN"), are not violent felonies under the ACCA's force clause. Both offenses are defined by the term "assault" and, therefore, can be committed in the absence of physical injury, actual or threatened. *See Montes-Flores*, 736 F.3d at 369 ("[A]lthough ABHAN is defined as the unlawful act of violent injury to another accompanied by circumstances of aggravation, a conviction for ABHAN does not require actual bodily harm to another." (internal quotation marks and citation omitted)); *see also Hemingway,* 734 F.3d at 337 (noting that "the first element of an ABHAN offense—a violent injury—can be satisfied even though no actual bodily harm was done" (internal quotation marks omitted)).

For the same reason, we recently held that the South Carolina statutory offense of assaulting, beating, or wounding a law enforcement officer while resisting arrest ("ABWO") is also not a violent felony under the ACCA. *See Jones,* 914 F.3d at 903.

15

The ABWO statute provides that the offense can be committed via an "assault" on a police officer. *Id.* at 900. And, like the common-law offenses of ABHAN and AHAN, the ABWO statute had been applied consistent with the common law definition of assault. *See id.* at 903 (noting that a defendant has been convicted in South Carolina for "violating the ABWO statute by spitting blood on an officer's boot" (citing *State v. Burton*, 562 S.E.2d 668 (S.C. Ct. App. 2002), vacated on other grounds, *State v. Burton*, 589 S.E.2d 6, 9 (S.C. 2003))). Thus, the "conviction by the jury for the ABWO offense, plus the Supreme Court of South Carolina's reinstatement of that conviction [on appeal], satisfie[d] the reasonable probability inquiry." *Id.*

Not so with CDV. Unlike ABHAN, AHAN, and ABWO, the CDV statute does not define the crime in terms of an "assault" on another. Nor does the phrase that Drummond hangs his hat on -- "violent injury" -- appear in the statutory definition. On the contrary, the CDV statute explicitly requires that there be, at a minimum, a threat "to cause physical harm or injury" to the defendant's household member, along with "the present ability under circumstances reasonably creating fear of imminent peril" in the victim. S.C. Code Ann. § 16-25-20(A). Common-law assault, as defined by the South Carolina courts, plainly does not require that the threatened action rise to the level of one that is reasonably likely to cause physical harm or injury.

Under general rules of statutory interpretation, South Carolina gives the "words in a statute their plain and ordinary meaning." *State v. Middleton,* 626 S.E.2d 74, 76 (S.C. Ct. App. 2006). "The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature." *Nelson v. Ozmint*, 702 S.E.2d 369, 371 (S.C. 2010).

16

Although penal statutes "must be strictly construed against the State," "all rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute." *Id.* Here, there is nothing in the language of the CDV statute -- which explicitly requires a threat "to cause physical harm or injury to a person's own household member" -- that leads us to the conclusion that the state legislature intended that a CDV conviction could rest on nothing more than the threat of an offensive, rude or angry touching that carries no threat of physical harm or injury whatsoever.

Nor has Drummond pointed us to any South Carolina case that indicates that this is a "realistic probability, not a theoretical possibility." *Doctor,* 842 F.3d at 308. Drummond's reliance upon the state court's opinion in *State v. LaCoste*, as support for his view that South Carolina recognizes no distinction between a common law assault and criminal domestic violence, save for the identity of the victim, is misplaced.

In *LaCoste*, the defendant was indicted on charges of resisting arrest, disorderly conduct and CDV. *See LaCoste,* 553 S.E.2d at 466. According to the testimony of a responding police officer, LaCoste and his wife were engaged in a "verbal altercation" in a mall parking lot when he arrived, and "LaCoste was flailing his arms about in an angry, almost hostile manner." *Id.* at 466. An eyewitness testified that, prior to the arrival of the officer, she saw LaCoste slapping at his wife, striking her several times, and that Mrs. LaCoste told her that she was afraid of her husband. *See id.* But at trial Mrs. LaCoste

testified on her husband's behalf, swearing that she initiated the altercation and that he never hit her. *See id.* at 467.

On appeal, the court, *inter alia,* affirmed the trial court's denial of LaCoste's motion for directed verdict on the CDV charge because, "[d]espite the lack of testimony regarding injuries to Mrs. LaCoste," the testimony of the eyewitness was "sufficient to support submission of the case to the jury on the theory that LaCoste caused physical harm to a household member or attempted to cause the same with the 'apparent present ability under circumstances reasonably creating fear of imminent peril.'" *Id.* at 469-70.

The appeals court also rejected the defendant's argument that the trial court erred by charging the jury on simple assault as a lesser-included offense of CDV.[5] "The test for determining if a crime is a lesser included offense is whether the greater of the two offenses includes all the elements of the lesser offense. If the lesser offense includes an element which is *not* included in the greater offense, then the lesser offense is not included in the greater offense." *Id.* at 471 (citation and internal quotation marks omitted) (emphasis added)). Therefore, "to warrant a jury charge on the lesser offense" of simple assault, "the evidence viewed as a whole must be such that the jury could conclude the defendant is guilty of the lesser offense *instead of* the indicted offense" of CDV. *Golston*, 732 S.E.2d at 178. The defendant in *LaCoste* contended that assault included two elements that are not included in the elements of a CDV charge -- assault's

---

[5] Although the appeals court reversed LaCoste's convictions because the trial court erred in excluding hearsay statements by an unknown male witness, it addressed the CDV and assault arguments and remanded the case for a new trial consistent with these rulings. *State v. LaCoste,* 553 S.E.2d 464, 472 (S.C. Ct. App. 2001).

requirement of a "violent injury" and the requirement that the assault be committed on the person of another. The court rejected that argument and concluded that common-law "simple assault contains no element which is not included within the offense of CDV." *LaCoste*, 553 S.E.2d at 472.

As to the person-of-another element of assault, the court held that "attempting to cause harm to a household member is in fact an attempt to cause harm to the person of another." *Id.* Accordingly, the court concluded that the CDV statutory offense does include the person-of-another element, but also includes "the *additional* element that the person of another be a household member." *Id.* (emphasis added). As to the violent-injury element, the court noted that, despite the "misleading" language of the standard definition of assault, an assault conviction does not actually require violence or even serious injury; an actual or attempted "touching of the person of an individual in a rude or angry manner" will suffice. *Id.* at 471 (internal quotation marks omitted). The court therefore concluded that the "violent injury" element of common-law assault did not require *more* than the "physical harm or injury" element of CDV. The court, however, did not address the separate question of whether the *CDV statute* required more than common-law assault in terms of the nature or degree of injury required to support a conviction.

Thus, contrary to Drummond's proffered interpretation, *LaCoste* does not stand for the proposition that the only difference between CDV and simple assault is the identity of the victim, *i.e.,* a household member. That was not the issue before the court, nor does the opinion lead us to this conclusion. There was no issue in *LaCoste* regarding

19

the marital status of the defendant and his victim. But because Mrs. LaCoste testified on her husband's behalf, denied that he struck her, and there was no evidence of physical injuries, the jury could have concluded that LaCoste's conduct rose to the level of a "violent injury" for purposes of an assault, but not to the level of "physical harm or injury" necessary to convict him of CDV. *See Golston,* 732 S.E.2d at 178 (noting that jury charge on lesser offense is warranted when "the evidence viewed as a whole [is] such that the jury could conclude the defendant is guilty of the lesser offense *instead of* the indicted offense"). In other words, while the threat of an offensive touching is a necessary predicate for a CDV conviction *and* an assault conviction in South Carolina, the threat of an offensive touching alone would *not* be sufficient for a CDV conviction, because the CDV statute additionally requires that the offensive touching be sufficient to cause "physical harm or injury" to the other person.

The physical harm-or-injury element thus distinguishes CDV from common-law assault, making CDV the greater offense encompassing the lesser offense of assault. The same element also brings CDV within the bounds of a violent felony under the ACCA. Accordingly, regardless of the fact that common-law assault can be committed without causing injury, CDV is a different offense, and it requires at least a threat of physical harm or injury under circumstances reasonably creating fear of imminent peril. That satisfies the Supreme Court's definition of physical force under the ACCA, which means that South Carolina's CDV statute categorically qualifies as a violent felony under the ACCA.

D.

20

Although Drummond makes the same common-law-assault argument to all three of his CDV convictions, common-law assault was abolished as a criminal offense in 2010, when the South Carolina General Assembly passed an act making numerous changes to the criminal law, including the creation of a new statutory scheme of criminal assault offenses. *See* Omnibus Crime Reduction and Sentencing Reform Act of 2010, Act No. 273, 2010 S.C. Acts 1937, Part I, § 7(B) ("The common law offenses of assault and battery with intent to kill, assault with intent to kill, assault and battery of a high and aggravated nature, simple assault and battery, assault of a high and aggravated nature, aggravated assault, and simple assault are abolished for offenses occurring on or after the effective date of this act."); *State v. Middleton,* 755 S.E.2d 432, 434 (S.C. 2014) ("Through the passage of the [Omnibus Crime Reduction and Sentencing Reform Act of 2010], the legislature abolished all common law assault and battery offenses and all prior statutory assault and battery offenses."). Only Drummond's first offense -- a CDVHAN offense committed in 2003 -- was committed at a time when he could have been convicted of common-law assault. The other offenses (a third-offense CDV and another CDVHAN) were committed in 2012 and 2014, after the effective date of the statutory scheme. At the time of those offenses, the least-serious assault offense was third-degree assault and battery, which is violated if the defendant "unlawfully injures another person, or offers or attempts to injure another person with the present ability to do so." S.C. Code Ann. § 16-3-600(E)(1).

Neither Drummond nor the government address the terms of the 2010 act or the abolishment of common-law assault. Nonetheless, the analysis set out above resolves the

question as to the later offenses as well. Regardless of the conduct that might be sufficient to support a conviction for statutory assault, the CDV statute requires the defendant to at least threaten to cause physical harm or injury "with apparent present ability under circumstances reasonably creating fear of imminent peril." S.C. Code Ann. § 16-25-20(A)(2). Because CDV convictions categorically qualify as violent felonies, it does not matter if a lesser-included offense does not qualify.

## E.

The dissent disagrees with our reading of the CDV statute. Noting that the purpose of the CDV statute is to "protect against harm and violence from members of an individual's household," *Arthurs v. Aiken Cty.*, 525 S.E.2d 542, 549 (S.C. Ct. App. 1999), the dissent contends that it makes no sense for the CDV statute to have created an offense that is harder to prove than common-law assault. Like Drummond, the dissent believes that the only difference between common-law assault and CDV is the identity of the victim. Accordingly, because common-law assault can be based on the threat of a rude or offensive touching, the dissent believes that a CDV conviction can be based on the threat of a rude or offensive touching of a household member. In our view, this argument fails to acknowledge or grapple with the actual language of the CDV statute.

The CDV statute, which was passed at a time when common-law assault was a prosecutable crime in South Carolina, does not borrow the language of common-law assault, but instead uses a very different phrase requiring a defendant to cause or threaten to "cause physical harm or injury to a person's own household member with apparent present ability under circumstances reasonably creating fear of imminent peril." S.C.

22

Code. Ann § 16-25-20(A). Because "the General Assembly is [presumed to be] aware of the common law," *Grier v. AMISUB of S.C., Inc.*, 725 S.E.2d 693, 696 (S.C. 2012) (internal quotation marks omitted), its deliberate use of a phrase not rooted in the common-law offense of assault indicates that the General Assembly did not intend the CDV statute to mirror the requirements of common-law assault. *Cf. id.* ("[W]here a statute uses a term that has a well-recognized meaning in the [common] law, the presumption is that the General Assembly intended to use the term in that sense." (internal quotation marks omitted)). The South Carolina legislature, not this court, chose to include additional requirements in the CDV statute, and we are obliged to interpret those requirements in accordance with their plain and ordinary meaning. *See Middleton,* 626 S.E.2d at 76 (S.C. Ct. App. 2006) (explaining that the terms of a statute must be given "their plain and ordinary meaning"). The plain and ordinary meaning of "physical harm or injury" does not include a rude tap on the shoulder, and a person threatened with a rude tap on the shoulder could not reasonably be said to be in "fear of imminent *peril*," as required by the CDV statute.

While Drummond and the dissent can point to South Carolina cases where a defendant was convicted of *assault* based on conduct that did not cause physical harm or injury, they cannot identify a single case where the defendant was convicted of *CDV* without causing harm or injury. The CDV statute plainly and explicitly requires a threat of physical harm or injury, and we decline the invitation to read that language as meaning that no physical harm or injury is actually required.

F.

23

Accordingly, we hold that the CDV statute's minimum requirement of a threat to cause physical harm or injury to a person's own household member satisfies the ACCA's requirement that a predicate offense have as an element the threatened use of physical force capable of causing physical pain or injury to another person. Drummond's felony convictions for third-offense CDV and CDVHAN are categorically violent felonies for purposes of the ACCA, and we therefore affirm his sentence.

IV.

For the foregoing reasons, we affirm Drummond's conviction and sentence.

*AFFIRMED*

FLOYD, J., concurring in part and dissenting in part:

I join parts I and II of this opinion, but because I fundamentally disagree with how the majority reads *State v. LaCoste*, 553 S.E.2d 464 (S.C. Ct. App. 2001), I must dissent as to part III. While South Carolina criminal domestic violence (CDV) may be an odious crime, it is not a violent felony under the ACCA. In holding that it is, I believe the majority misconstrues the reasoning of the South Carolina Court of Appeals in *LaCoste*. Because I read *LaCoste* differently, I would hold that South Carolina CDV is not a violent felony under the ACCA, consistent with our opinion in *United States v. Hemingway*, 734 F.3d 323 (4th Cir. 2013).

I.

As the majority discusses, we have issued unpublished opinions concluding that CDV is categorically a crime of violence. Since those cases are not binding, I consider in the first instance whether CDV is a crime of violence.

I agree with the parties and with my colleagues in the majority that CDV should be analyzed using the categorical approach, as opposed to the modified categorical approach. Under that approach, we are to review the elements of the crime and discern "the minimum conduct necessary for a violation under state law." *United States v. Gardner*, 823 F.3d 793, 803 (4th Cir. 2016) (internal quotation marks omitted). South Carolina Code § 16-25-20(A) states that an individual commits CDV when they "(1) cause physical harm or injury to a person's own household member; or (2) offer or attempt to cause physical harm or injury to a person's own household member with

25

apparent present ability under circumstances reasonably creating fear of imminent peril." The least culpable means of committing CDV is to "offer . . . to cause physical harm or injury to a person's own household member with apparent present ability under circumstances reasonably creating fear of imminent peril." Thus, the operative question is whether that conduct amounts to "threatened use of physical force against the person of another . . . ." 18 U.S.C. § 924(e)(2)(B)(i). I would hold that the answer is no.

Most CDV cases adjudicated by South Carolina state courts involve violent physical assaults that easily fall under the ACCA's force clause. *See, e.g., State v. Chase*, 2011 WL 11734321 (S.C. Ct. App. 2011) (affirming defendant's conviction of criminal domestic violence of high and aggravated nature where he choked and brutally assaulted victim). And there is good reason to conclude that the CDV statute does not encompass words uttered at a significant physical or temporal remove, no matter how vulgar or violent; in *State v. Hawes*, the South Carolina Court of Appeals held that recordings of a wife threatening to kill her husband and his new girlfriend were not evidence of CDV because "the recordings do not indicate [the wife] had 'apparent present ability[,] under circumstances reasonably creating fear of imminent peril[,]' 'to cause physical harm or injury' to [her husband]." 730 S.E.2d 904, 905 n.1 (S.C. Ct. App. 2012), *vacated on other grounds*, 767 S.E.2d 707 (S.C. 2015).

But there is a spectrum of conduct between the recordings the *Hawes* court refused to find as evidence of CDV and the brutal assault in *Chase* that easily satisfies the "physical force" contemplated by ACCA's force clause. It is in this murky middle ground that the "most innocent conduct" of an "offer . . . to cause physical harm" exists.

26

However, no South Carolina state court case discusses this conduct in the context of the CDV statute. For guidance, then, I turn to South Carolina's interpretation of similar language in the common-law crime of assault.

Under South Carolina law, assault is "an unlawful attempt or offer to commit a violent injury upon another person, coupled with the present ability to complete the attempt or offer by a battery." *State v. Murphy*, 471 S.E.2d 739, 741 (S.C. Ct. App. 1996). In *LaCoste*, the South Carolina Court of Appeals recognized that "assault and subsection (2) of the CDV statute appear very similar," and went on to acknowledge that assault had been defined as "any touching of the person of an individual in a rude or angry manner, without justification." 553 S.E.2d at 471 (quoting *State v. Mims*, 335 S.E.2d 237, 237 (S.C. 1985)). The *LaCoste* court discussed the inclusion of the term "violent injury" in the common-law crime of assault, reasoning that "[t]he adjective 'violent' may be somewhat misleading," as assault and battery has also been defined as "any touching of the person of an individual in a rude or angry manner, without justification." *Id.* (quoting *Mims*, 335 S.E.2d at 237). The *LaCoste* court concluded that "[the CDV statute] merely includes the additional element that the person of another be a household member." *Id.* at 472.

As there are no South Carolina cases analyzing what an "offer" of "physical harm" means in the context of a CDV conviction, *LaCoste*'s analysis should guide our own. And although *LaCoste* does not speak with perfect clarity on the issue at hand, the most natural reading of the court's analysis is that under the CDV statute, an "offer . . . to cause physical harm" includes an offer to touch a person in a rude or angry manner. We

27

have already determined that "rude or angry" touching does not count as "physical force" within the meaning of ACCA's force clause. *See Hemingway*, 734 F.3d at 369 (holding that South Carolina crime of assault and battery of a high and aggravated nature is not a crime of violence because it could be committed even if "no real force was used against the victim.").

Accordingly, I would hold that South Carolina CDV is not a crime of violence and remand for resentencing without the ACCA enhancement. In concluding the contrary, the majority makes two analytical errors. First, the majority's analysis assumes that South Carolina's definition of common-law assault has no bearing on the definition of "physical harm" in the CDV statute. But for the reasons just discussed, that assumption does not square with *LaCoste*. Moreover, the majority infers based on the facts of *LaCoste*, in which the jury heard evidence that LaCoste "repeatedly struck a woman who identified herself as his wife," *id.* at 469, that CDV necessarily involves greater harm or injury than assault. However, that portion of the *LaCoste* decision responds to the defendant's argument that he was entitled to a directed verdict, and merely recites this testimony for the purpose of showing that there was sufficient evidence to submit the case to the jury. *Id.* It does not support the conclusion that the element of harm or injury in CDV offenses is categorically more severe than the element of injury in assault offenses.

The majority's reading of a higher threshold of force into CDV offenses assumes a higher bar for obtaining a CDV conviction than an assault conviction, a result seemingly at odds with the "essential purpose of the [CDV] statute . . . to protect against harm and

28

violence from members of an individual's household." *See Arthurs v. Aiken Cty.*, 525 S.E.2d 542, 549 (S.C. Ct. App. 1999). I see no commonsense reason for South Carolina to try to protect people from violence at the hands of their own household by creating a statutory crime that is *harder* to prove than common-law assault. Yet the majority's analysis requires us to assume that South Carolina did just that. I cannot agree. For this reason and the reasons already stated, I cannot agree that CDV is categorically a violent felony under the ACCA.[*]

---

[*] The PSR indicates only three past convictions that would be "violent felonies" for ACCA purposes. Therefore, if CDV is not a crime of violence then Drummond would not have the requisite three predicate convictions to qualify for armed career criminal status. In the recent case of *United States v. Hodge*, 902 F.3d 420 (4th Cir. 2018) we held that the government must identify all of the convictions it wishes to use to support an enhanced sentence under ACCA at the time of sentencing, and may not preserve the ACCA enhancement upon resentencing with a prior conviction that was not designated as an ACCA predicate in the PSR. Accordingly, we need not determine whether CDVHAN is a crime of violence.